THE STATE OF NEBRASKA, EX REL. THOMAS MALLOY, v. JAMES SKIRVING.

1. **County Commissioner:** RESIDENCE. A county commissioner must continue to reside in the district in and from which he was elected, and his removal from the district, although he remains in the county, vacates the office.

2. ————: VACANCY: NOTICE OF ELECTION. Where a vacancy occurs in the office of county commissioner more than thirty days before a general election, it is to be filled thereat; and the failure of the county clerk to call attention to such vacancy in the election notices posted by him, where the fact is generally known and acted on by the voters of the county, will not invalidate the votes cast to fill said vacancy.

INFORMATION by *quo warranto.*

*Uttley & Small,* for relator.

*James Skirving,* for respondent.

32

MAXWELL, CH. J.

This is an action of *quo warranto*, which is submitted to the court on the following stipulation of facts:

1st.   That at the general election in November, 1884, the defendant was duly elected to the office of county commissioner of Holt county, and when so elected he was residing in and was elected for the second commissioner's district of said. county.

2d.   That in January, 1885, at the time required by law, said defendant gave the bond and took the oath required by statute, "and at once began to perform the functions of said office and continued to so perform the functions of said office, and did use said office and the functions thereof until on or about the 25th day of March, 1885, when the said James Skirving removed from said 2d commissioner's district in said Holt · county into the 3d commissioner's district in said Holt county, and has since said date resided and made his place of abode in said 3d commissioner's district, and has continued all the time to use and exercise the functions of said office, and does now exercise the same.

That on the 14th day of September, 1885, the county clerk, county judge, and county treasurer of Holt county were duly notified of the facts hereinabove set forth, and that it was claimed from the existence of said facts that a vacancy existed in the office of county commissioner of said 2d commissioner's district of said Holt county, and said officials were requested to fill said vacancy by appointment, but failed to act in the premises.

3d.   Upon the day of the holding of the general election for and in the state of Nebraska, in the month of November, 1885, Thomas Malloy, relator, was a citizen of the United States and an elector and resident of the 2d commissioner's district in Holt county aforesaid, and then had and now has all the qualifications required by law to hold the office of commissioner of said 2d commissioner's district.

4th. That about one month previous to the holding of the general election of the state of Nebraska held in the month of November, 1885, the republican party in the county of Holt, in the state of Nebraska, at a regular republican convention, nominated Thomas Malloy, relator, as candidate for the office of county commissioner of said 2d commissioner's district in said Holt county, to fill the so claimed vacancy caused by the removal of said James Skirving aforesaid from said 2d commissioner's district as above set forth; and two or three days thereafter the democratic party of the county of Holt, in convention assembled, nominated John Cronin as candidate for the office of county commissioner of the said 2d commissioner's district of Holt county, to fill the claimed vacancy caused by the removal of said James Skirving, defendant, from said 2d commissioner's district, and it became generally known throughout the county of Holt that said Thomas Malloy and John Cronin were candidates for the office of county commissioner of said 2d commissioner's district upon the republican and democratic tickets respectively as above set forth, and said candidates were voted for at said general election held in the month of November, 1885, for the election of officers in the state of Nebraska, and said Thomas Malloy received for the office of county commissioner of said 2d commissioner's district 1,465 votes, and said John Cronin received for the office of county commissioner for said 2d commissioner's district 1,276 votes, and F. O. Smith received for said office 248 votes, and the election returns of said election held in the various election precincts in and for said Holt county were duly returned to the county clerk of Holt county, and were duly canvassed by a duly constituted board of canvassers of said Holt county; and the said Thomas Malloy was found to have received a majority of the votes cast for the office of county commissioner of said 2d commissioner's district, and afterwards, on the 18th day of November, 1885, the county clerk of Holt county issued

to said Thomas Malloy a certificate of his election to said office of county commissioner," and afterwards, to-wit, on the 25th day of November, 1885, said Thomas Malloy filed his bond as commissioner elect of said Holt county to fill the vacancy hereinabove described, and said bond was duly approved by said county judge, and said Thomas Malloy took the oath of office as commissioner elect in and for the 2d commissioner's district of said Holt county, and thereafter, to-wit, on the 30th day of November, 1885, the said Thomas Malloy, duly qualified as commissioner elect of said Holt county, did assemble with Joseph E. West and George Bastedo, county commissioners of said Holt county, said James Skirving being also present and acting as commissioner by virtue of his election as above described, at the office of the county commissioners of said Holt county, in O'Neill, the county seat of said Holt county, and did there claim a seat with said county commissioners as a member of the board of county commissioners of said Holt county, but the said board and the said James Skirving did refuse to permit said Thomas Malloy to have a seat with said board and hold the same, the said James Skirving as claimed by said Thomas Malloy, and excluded said Thomas Malloy from said seat, and prevented said Thomas Malloy from exercising the functions of said office and from representing said office, and still refuses to permit said Malloy to have a seat with said county board and in any manner to exercise the functions of said office, and the said James Skirving still holds said seat with said county board, and exercises and uses the functions of the office of county commissioner of the said 2d commissioner's district in and for the said county of Holt, and will not permit the said Thomas Malloy to exercise the functions thereof.

5th.    That the county clerk in the election notice given of the offices to be filled at the general election held in Holt county in the month of November, 1885, for the election of the offices to be filled in said Holt county, did not state

in said notice that a vacancy existed in the office of county commissioner in said 2d commissioner's district, and did not notify the electors of said Holt county that a candidate for the office of commissioner in said 2d commissioner's district would be voted for at said election.

6th. · That the highest number of votes cast for any office in said Holt county at said general election was 3,124 votes.

There are other stipulations as to the effect of the agreement herein, etc., to which it is unnecessary to refer.

Two questions are presented by the record. *First.* Did the removal of the defendant from the second commissioner's district vacate the office. *Second.* If so, was the relator properly elected to said office?

In determining the first question but little aid can be obtained from adjudged cases. It is one that rests entirely upon the construction to be given to the various provisions of our statutes relating to the subject.

Section 53 of chapter 18, Compiled Statutes, provides that, "the board of county commissioners shall consist of three persons. They shall have the qualifications of electors and shall be elected *in* their respective districts at the annual general election."

Section 54: "Each county shall be divided into three districts, numbered respectively one, two, and three, and shall be composed of two or more voting precincts, comprising compact and contiguous territory and embracing as near as may be possible one-third of the population of the county, and not subject to alteration oftener than once in three years, and one commissioner shall be elected *from* each of said districts by the qualified voters of the whole county, as hereinbefore provided. The district lines shall not be changed at any session of the board unless all of the commissioners are present at such session."

Section 101 of chapter 26 provides that, "every civil office shall be vacant upon the happening of either of the

following events at any time before the expiration of the term of office as follows: 1. The resignation of the incumbent. 2. His death. 3. His removal from office. 4. The decision of a competent tribunal declaring his office vacant. 5. His ceasing to be a resident of the state, district, county, township, precinct, or ward in which the duties of his office are to be exercised or for which he may have been elected," etc.

The defendant admits that a party elected county commissioner must be a resident of the district when the election takes place, but he contends that as the duties of the office can be performed only at the county seat, and are not to be performed in the district for which he was elected, unless the county seat is in that district, that therefore a removal from the district does not vacate the office. He claims that the word "district," following as it does the word "state," in section 101 of chapter 26, refers to subdivisions larger than a county and not to the subdivisions of a county. Webster defines the word district as " a defined portion of a state or city for legislative, judicial, fiscal, or elective purposes." It may comprise territory of greater extent than a county, as a judicial district, etc., or may contain but a small portion of the territory of a county or city, as a school district. A reasonable construction of the statute would seem to be that where it requires a party when elected to be a resident *in* the district, and that one commissioner shall be elected *from* each of the commissioner's districts, and declares the effect of removal from the district to be to vacate the office, to hold this applies to all cases where the officer has ceased to be a resident of the district in which the duties of his office are to be exercised, or for which he may have been elected. If this were not the law each county commissioner upon being elected could remove to the county seat, and each member of the legislature remove to the capital of the state, etc. The object of the legislature in enacting this

provision no doubt was to secure as far as possible to all parts of a county fair representation on the board of county commissioners, by the selection of members whose residence and interests were in the district where each was elected; and as they are required to reside in various parts of the county they may be supposed to labor for the best interests of the entire county and not for any particular locality. The case is not materially different from the wards of a city. Councilmen are chosen from each of the wards, who have no power except as members of the council, and none of the duties of their office may perhaps be performed in the ward for which they were chosen, yet if one removes from the ward where he was elected the office becomes vacant. The act creating the board of county commissioners for each organized county was passed in 1855–6, more than thirty years ago, and the construction placed upon that act from the time of its passage till now has, so far as the writer is aware, been that a county commissioner must continue to reside in the district in and for which he was elected, and that his removal, therefrom vacated the office.

We are referred to *State v. Board of Supervisors*, 21 Wis., 449, and *Smith v. State*, 24 Ind., 101, as holding a contrary view. We have examined those cases and do not think they are applicable under our statute. We therefore hold that the defendant by removing from the second district vacated the office held by him of county commissioner.

2. The right of relator to the office in question. It will be seen from the admitted facts that the relator received 1,465 votes, John Cronin 1,276, and F. O. Smith 248 for said office, the aggregate of which is 2,989 votes, and that the highest number of votes cast for any office in that county at that election was 3,124. This shows that it was generally understood in that county that a vacancy existed, and that the candidates named were balloted for to fill said office.

Section 107 of chapter 26, Compiled Statutes, provides that, "vacancies occurring in any state, judicial district, county, precinct, township, or any public elective office thirty days prior to any general election shall be filled thereat," etc.

As from the agreed statement of facts, it appears that the defendant removed from the second district in March, 1885. Being more than thirty days prior to the election, it was the right and duty of the electors of said county to fill the vacancy at said election, and the exercise of this right does not depend on the notice or want of it of the county clerk. In deciding this, however, we do not intend to go beyond the facts in this case. Here it seems to have been generally understood by the electors of the county that a vacancy existed, and they sought to fill said vacancy, nearly all those voting at that election casting their ballots for one of the candidates named.

This, we think, was sufficient to show that the election was general and participated in by all the electors who desired to vote upon that question. What the rule might be, had but a small percentage of the voters participated in the election, is not before the court.

It is clear that the relator is entitled to the office of county commissioner for the second district of Holt county. It is therefore considered that the defendant be ousted from the office of county commissioner of the second district of Holt county, and that the relator be instated therein.

JUDGMENT ACCORDINGLY.

THE other judges concur.