State, ex rel. Bates, v. Thayer.

---

STATE, EX REL. EDWARD BATES, v. JOHN M. THAYER ET AL.

[FILED JANUARY 2, 1891.]

1. **Election of Judges:** CANVASS: MANDAMUS AGAINST GOVERNOR. T. L. N., district judge of the Sixth district, whose official term would have expired January, 1892, resigned December 12, 1889, on which date the governor appointed J. H. S. to the vacancy, who qualified and entered upon the office. The general election of 1890 was the first general election held more than thirty days after the occurrence of such vacancy. Thirty days previous to the time of holding said election the governor issued his proclamation under sec. 11 of chap. 26, Comp. Stats., but inadvertently omitted to insert and designate the office of judge of the Sixth district, as a vacancy to be filled at said election. At least twenty days previous to the election the county clerks of the respective counties of the district made out and delivered to the officer or officers provided by law for the counties respectively, notices of such election, duly posted up ten days prior to the election, which notices, amongst the offices to be filled, contained and designated that of judge of the Sixth judicial district to fill the existing vacancy. The whole number of votes cast within the district for any office was 12,734, of which 7,612 were cast for the relator and 4,841 for the incumbent, both being candidates for the office at said election. The votes so cast were by the judges of the election of the several townships, precincts, and wards of the several counties of the district duly returned to the

State, ex·rel. Bates, v. Thayer.

county clerks within the time and in the manner provided by law, and were by the county clerks duly canvassed, and abstracts thereof were duly made on separate sheets and directed and forwarded to the secretary of state. The governor, secretary of state, auditor of public accounts, treasurer of state, and attorney general, having failed to meet as the state board of canvassers at the office of the secretary of state, on the third Monday after said election, and canvass the votes so cast for judge of the Sixth judicial district, and return to the office of secretary of state, upon an application for a writ of *mandamus* against them to compel the performance of such duty, *held*, that *mandamus* will lie against the governor to enforce the performance of a ministerial duty enjoined upon him by law.

2. ———: VACANCY: THE APPOINTMENT of J. H. S. as judge of the sixth district was temporary, to terminate upon the qualification of a judge to be elected to fill the vacancy occurring upon the resignation of T. L. N.

3. ———: ———: WHEN FILLED. The general election of 1890 was an election at which a vacancy in the office of district judge, occurring in December, 1889, could be filled, although the vacancy was then temporarily filled by appointment.

4. ———: PROCLAMATION: OMISSION. The provision of law requiring the governor, thirty days previous to an election at which any state officer is to be chosen, to issue his proclamation therefor is directory merely.

5. ———: ———: FRANCHISE. Under our constitution and laws the elective franchise is vested in the electors, and its exercise regulated by law. It is not deposited in the executive to be doled out by proclamation.

ORIGINAL application for *mandamus*.

*George B. France*, for relator:

The supreme court may issue a *mandamus* against even the governor to compel him to perform a purely ministerial duty (Maxwell, Pl. & Pr. (1889), p. 735; *Magee v. Board*, 10 Cal., 376); and the duties of the state canvassing board are ministerial only (*Hagge v. State*, 10 Neb., 51; *Long v. State*, 17 Id., 61; *Clark v. McKenzie*, 7 Bush [Ky.], 523; *People v. Hillard*, 29 Ill., 414). If the board refuses to canvass any of the votes, *mandamus* lies to com-

pel it to do so, even after adjournment *sine die.* (*Hagerty v. Arnold,* 13 Kan., 367; *Lewis v. Com'rs,* 16 Id., 102; *State v. Bailey,* 7 Ia., 390; *State v. Dinsmore,* 5 Neb., 147; *State v. Hill,* 10 Id., 58; *State v. Stearns,* 11 Id., 106; *State v. Peacock,* 15 Id., 443; *State v. Skirving,* 19 Id., 498; *State v. Wilson,* 24 Id., 140.) The board had no authority to go behind the returns and inquire if the election had been properly called; its duty was simply to ascertain and declare the apparent result. (Cases *supra,* and *O'Ferrall v. Colby,* 2 Minn., 180; *Brower v. O'Brien,* 2 Carter [Ind.], 423.) Under art. 6, sec. 21, Const., Smith's appointment lasted only until the next general election, which was November 4, 1890. Hence the office of district judge became vacant on that day, and it was both the right and the duty of the electors to fill the vacancy. (*State v. Dodson,* 21 Neb., 218; *State v. Cobb,* 2 Kan., 32.) The right to hold an election is derived not from official notices, but from the constitution and statutes. (*State v. Skirving,* 19 Neb., 498; *People v. Brenham,* 3 Cal., 477; *State v. Jones,* 19 Ind., 356; *Dishon v. Smith,* 10 Ia., 212; *People v. Hartwell,* 12 Mich., 508; *People v. Cowles,* 13 N. Y., 350; *State v. Orvis,* 20 Wis., 235; *State v. Goetze,* 22 Id., 363.) *McKune v. Weller,* 11 Cal., 49, cited by respondent, was rendered under a statute which provides for special elections, which the governor alone is empowered to call. (Deering's Cal. Codes and Statutes, 216.) In this state there is no provision for filling a vacancy in the office of district judge by special election, and the governor's proclamation serves a different purpose than in California. Here it is merely a notification to the several county clerks, and the statute providing for it is directory only. For statutes governing elections are merely directory unless they are such that a failure to comply with their provisions would prevent an expression of the popular will. (*People v. Hartwell,* 12 Mich., 58.) In the present case the electors were duly notified by the county clerks.

Where the voters generally participate in an election held at the time fixed by law, it will be valid without the statutory notice or proclamation. (*State v. Skirving*, 19 Neb., 496; *Ellis v. Karl*, 7 Id., 381; *Jones v. Gridley*, 20 Kan., 584.) If a governor could subvert popular rights by withholding an election notice, he might be able to perpetuate himself and his favorites in office.

*William Leese, Attorney General,* and *E. J. Hainer,* for respondents:

*Mandamus* does not lie to compel a canvass of votes except where the right is clear and unquestionable. (*State v. Judge*, 13 Ala., 805; *Rose v. Comr's*, 50 Me., 243; *People v. Johnson*, 100 Ill., 537 [39 Am. Rep., 63]; *State v. Garesche*, 65 Mo., 480; *State v. Randall*, 35 O. St., 64.) The duty of the board to assemble and canvass the returns in this case was anything but clear. The writ will not issue if unavailing, or if the election was unnecessary or unauthorized. (*State v. Robinson*, 1 Kan., 17; *Peters v. Board*, 17 Id., 365; High, Ex. Legal Remedies, 57, 64.) The relator must show a clear title to the office; (High, sec. 64, and cases cited; *State v. Albin*, 44 Mo., 346.) The right to issue the writ against the chief executive is denied by the weight of authority. (High, secs. 120, 121, and cases cited; *Jonesboro v. Brown*, 8 Baxt. [Tenn.], 490 [35 Am. Rep., 713]; *Vicksburg v. Lowry*, 61 Miss., 102 [48 Am. Rep., 76].) Our law nowhere provides for a special election of district judges. Art. 6, sec. 21, Const., relating to the filling of vacancies, is not self-operative, and to be effective must be supplemented by legislation. (Cooley, Const. Lim. [4th Ed.], 99 *et seq.; Sawyer v. Haydon*, 1 Nev., 75.) This section relates solely to judicial officers, and the election mentioned must be a general election for such officers. (*McKune v. Weller*, 11 Cal., 49; *State v. Buck*, 13 Neb., 273; *People v. Wilson*, 72 N. Car., 155.) The fact of the vacancy must first be determined by the

proper authority, and the machinery of the law set in motion, before there can be a legal election. Only in the case of regular and general elections can it be said that the right to hold the same is derived from the law and not from the notice. (Cooley, Const. Lim., 603.) In special or contingent elections the office of the proclamation is to inform the people of a fact not supposed to be known otherwise. Hence, in such elections the proclamation is the authority and not the mere notification. (*State v. Buck*, 13 Neb., 273; *McKune v. Weller*, 11 Cal., 49; *People v. Martin*, 12 Id., 409; *Westbrook v. Rosborough*, 14 Id., 180; *Kenfield v. Irwin*, 52 Id., 164; *People v. Thompson*, 9 Pac. Rep. [Cal.], 833; *Mathews v. Board*, 9 Pac. Rep. [Kan.], 765; *Toney v. Harris*, 3 S. W. Rep. [Kan.], 614; *Ex parte Kennedy*, Id. [Tex.], 114; *Secord v. Foutch*, 44 Mich., 89; *Barry v. Lauck*, 5 Cold. [Tenn.], 588; *Brewer v. Davis*, 9 Humph. [Tenn.], 208.) *McKune v. Weller, supra*, is a leading authority, cited by the text writers generally, and has never been overruled or doubted. Its reasoning was adopted by this court in *State v. Buck, supra*. *People v. Cowles*, 13 N. Y., 350, cited by relator, turns upon the peculiar wording of the New York constitution, and was, moreover, rendered by a divided court. The objection that the governor might perpetuate himself in office, etc., is an attempt to found an argument upon an abuse of the law, and proves too much, since any officer may, if he choose, abuse his trust.

COBB, CH. J.

Edward Bates, the relator, presented his information on November 25, 1890, applying for a peremptory writ of *mandamus* to compel the state board of canvassers, created by section 53, chapter 26, of the Compiled Statutes, to canvass certain votes claimed to have been cast for the relator, as judge of the Sixth judicial district of this state,

at the general election held November 4, 1890. The re-
lator and the attorney general agreed to the following
stipulation of facts:

I. That the defendants, John M. Thayer, governor;
Benjamin R. Cowdery, secretary of state; Thomas H. Ben-
ton, auditor; John E. Hill, treasurer; and William Leese,
attorney general, compose the state board of canvassers of
the votes for electors, judges, and regents in this state.

II. That on November 4, 1890, a general election was
held for state officers and members of the legislature.

III. That on September 23, 1890, the governor issued
his proclamation for a general election to be held on No-
vember 4, 1890, calling upon the electors of the state to
elect the several officers in his proclamation enumerated,
and duly sent the same by mail to the several county
clerks as required by law, and that the same is the only
proclamation issued by the governor for said election,
to-wit:

ELECTION PROCLAMATION.

Under and by virtue of the authority vested in me by
section eleven (11) of chapter twenty-six (26) of the Com-
piled Statutes of Nebraska, entitled "Elections," I, John
M. Thayer, governor of the state of Nebraska, do hereby
issue my proclamation, declaring that on Tuesday, the
fourth day of November, A. D. 1890, there will be an
election held at the usual places of voting in said state for
the purpose of electing the following officers, to-wit:

One member of congress from the First congressional
district.

One member of congress from the Second congressional
district.

One member of congress from the Third congressional
district.

Governor.

Lieutenant governor.

Secretary of state.

State treasurer.

Auditor of public accounts.

Attorney general.

Commissioner of public lands and buildings.

Superintendent of public instruction.

State senators for each senatorial district, and represent-atives for each representative district, as provided by law.

Also, the electors of the state will vote upon the fol-lowing amendments to the constitution:

To amend sections two (2), four (4), and five (5) of ar-ticle six (6) of the constitution relating to the number of supreme judges.

Also, to amend section thirteen (13) of article six (6) of the constitution relating to the salary of the supreme and district court judges.

Also, to license and regulate the manufacture, sale, and keeping for sale intoxicating liquors as a beverage.

Also, to prohibit the manufacture, sale, and keeping for sale intoxicating liquors as a beverage.

In testimony whereof, I have hereunto set my hand and caused to be affixed the great seal of the state of Nebraska.

Done at Lincoln this 23d day of September, A. D. 1890.

[GREAT SEAL OF NEBRASKA.]

By the governor:          JOHN M. THAYER.

BENJAMIN R. COWDERY,

*Secretary of State.*

IV. That the electors of the Sixth judicial district also voted for the election of a district judge.

V. That the incumbent, Jerome H. Smith, was appointed judge of said district December 12, 1889, to fill the va-cancy caused by the resignation of T. L. Norval.

VI. That there was cast at the election, in the four counties comprising said district, Seward, York, Hamilton, and Polk counties, held on November 4, 1890, 12,734 votes and no more, of which the relator received 7,612, and Jerome H. Smith received 4,841.

VII. That in issuing his said proclamation the governor through inadvertency omitted to call any election for a judge of the district court of the Sixth judicial district, and failed to give any notice by proclamation or otherwise of any vacancy in said office, or that the electors of said judicial district would be called upon to elect a judge thereof at said election.

VIII. That the several county clerks of said judicial district have certified to the secretary of state the votes cast on the question of a district judge, and did so prior to November 26, 1890.

IX. That the defendants, though requested so to do by the relator, refuse to meet and canvass said votes cast for judge of said district court, alleging, as reason for such refusal, that no authority existed for holding said election for said judge on November 4, 1890, nor does the law enjoin upon the defendants the duty of canvassing the votes which may have been cast at said election for the office of judge of the district court of said district.

X. That by virtue of the appointment made by the governor to fill the vacancy caused by the resignation of Judge Norval, Jerome H. Smith now holds said office and fills the same, and by virtue of that appointment alone.

XI. That as early as July, 1890, the incumbent, Jerome H. Smith, was duly nominated by the republican convention as a candidate for judge of said Sixth judicial district, to be filled at said election; and in August, 1890, the relator was duly nominated by the peoples' independent convention, and afterwards in October said nomination was ratified by the democratic party; that each of said nominations was made by conventions of delegates and was published and made known throughout the Sixth judicial district.

XII. That the next election by the people of the state subsequent to the said vacancy in the office of judge of the Sixth judicial district, produced by the resignation of Judge Norval, occurred on November 4, 1890, and which was a

general election, at which the relator and Jerome H. Smith were rival candidates for election to the office of judge of the Sixth judicial district for the unexpired term of Judge Norval, who had resigned.

XIII. That at said general election the total number of votes cast for the office of judge of the Sixth judicial district was 12,455, of which the relator received 7,612, and the said Jerome H. Smith received 4,841, and other candidates received 2; not voting for either, 279. That the votes so cast as aforesaid were in the manner required by law counted, canvassed, certified, and transmitted by the several county clerks to the secretary of state, by whom the same were received before the 24th day of November, 1890.

XIV. That the relator is an elector and voter in said judicial district and is eligible to the office of district judge.

XV. That both the relator and the incumbent had at all times actual knowledge of said omission in said proclamation of the governor, and of the failure to call for an election of judge of said district, and the incumbent, during all the times mentioned herein, denied all authority for holding any election for said office of judge, and at all times insisted and claimed that any election for said office held on November 4, 1890, was absolutely null and void, and notwithstanding these facts the incumbent still continued to be a candidate for said office.

The attorney general with counsel appeared for the defendants, and answering denied each and every allegation of the relator.

The respondents in the brief of counsel say that while they present the point questioning the right of this court to issue a writ of *mandamus* against the chief executive officer of the state in any case, they are not disposed to urge it, and only present it in view of the public interest and a desire to have all questions raised by the proceedings passed upon.

Section 53 of the election law of 1879 provides that

"The votes cast for presidential electors, judges of the supreme and district courts, and regents of the university, shall be canvassed by a board of state canvassers, consisting of the governor, secretary of state, auditor of public accounts, treasurer, and attorney general, and a copy of the abstracts of votes cast for such officers shall be made by the county clerks, sealed up, directed to the secretary of state."

Sections 54 and 55 provide, first, that if the abstracts from any county are not received at the office of the secretary of state by the second Monday after the day of election, the secretary is authorized to send a messenger to the clerk of such county, who shall furnish such messenger with the abstracts or with a copy of them; second, that the abstracts of votes to be canvassed by the board of state canvassers shall be kept in the office of the secretary of state, and shall only be opened in the presence of such board at the time provided in section 56, on the third Monday after the election; and in case all of said returns shall not have then been received at the office of the secretary of state, the board may adjourn from day to day until the same shall have been received, not exceeding five days.

Section 57 provides that they shall make an abstract stating the number of ballots cast for each office, the names of all the persons voted for, for what office they respectively received the votes, and the number of votes each received, in words at length, and stating whom they declared to be elected to the office, which abstract shall be signed by the canvassers in their official capacity, and as state canvassers, and have the seal of the state affixed, but should any two or more persons be returned with an equal and the highest vote, the board shall decide by lot which of said persons is elected.

This duty, as appears by the stipulation of facts, the officers composing said board refused to do, or to meet for that purpose. The power and duty of this court is not

questioned to compel by *mandamus* the several officers other than the governor composing said board to meet and perform this duty if it shall appear that a vacancy existed in the office of district judge for the Sixth district to be filled at the general election of 1890, and that the relator was elected thereto with all legal forms and conditions required.

Mr. High, in his work on Extraordinary Legal Remedies, cited by counsel for respondents, at section 118 says: "And while, as to purely executive or political functions devolving upon the chief executive officer of a state, and as to duties necessarily involving the exercise of official judgment and discretion, the doctrine may be regarded as uncontroverted that *mandamus* will not lie, yet as to duties of a ministerial nature and involving no element of discretion, which have been imposed by law upon the governor of a state, the authorities are exceedingly conflicting and indeed utterly irreconcilable."

After further and somewhat extended discussion, the author reaches the conclusion that the great weight of authority is opposed to the exercise by the courts of the power to control the action of the executive in cases falling within the latter branch of the question, and says that such may be taken as the established doctrine upon this subject, and proceeds to cite adjudicated cases from seven states, those of Ohio, Alabama, California, Maryland, North Carolina, Indiana, and Montana on the one hand, and Arkansas, Georgia, Illinois, Louisiana, Missouri, Michigan, Maine, Minnesota, New Jersey, Rhode Island, Florida, and Tennessee upon the other. A careful reading of the cases cited leads me to the conclusion that while the author is supported by the number of states, his opinion is not sustained by the weight of argument, but that the cases on the other side more clearly support the opinion of Judge MAXWELL, from his consideration of the same authorities in his work on Pleading and Practice, (1889 Ed.),

p. 735, from which I quote: "There is a conflict in the authorities as to the right of a court to grant a *mandamus* against the governor of a state to compel the performance of a merely ministerial duty. That the courts have jurisdiction in such cases there seems to be no doubt. In a free government no officer is above the law, and should not be permitted to disregard it with impunity. No good reason can be given why a governor, whose duty it is to see that the laws are executed, should himself be permitted to set them at defiance."

From the stipulation of facts and the allegations of the petition it appears that at a general election in 1887, T. L. Norval was elected district judge for the Sixth judicial district, for the regular term commencing January, 1888, and terminating in January, 1892; that on December 12, 1889, T. L. Norval resigned said office, and the incumbent, Jerome H. Smith, was duly appointed by the governor to fill such vacancy; that at the general election, November 4, 1890, the relator and the incumbent were opposing candidates in said district for said office, and that the relator, out of a total vote of 12,734, received 7,612, and the incumbent 4,841 votes, and that the relator was eligible to the office. Also, that the several county clerks of the respective counties of the district, prior to November 26, 1890, certified to the secretary of state the votes cast at said election for said office.

In addition to the question stated above, as raised but not insisted upon, the respondents present two other questions: 1, That the election of 1890 was not an election at which it was competent to elect a judge for said district, but that the incumbent, Jerome H. Smith, was entitled to hold the office by virtue of his appointment until the annual election of 1891, at which the successor of Judge Norval would have been elected had he not resigned. This objection is sufficiently settled by the provisions of the four sections of the statute already cited when con-

strued together, the first providing that "the general election of this state shall be held on Tuesday succeeding the first Monday of November of each year." Section 103 provides that vacancies shall be filled in the following manner: "The office of the reporter of the supreme court, by the supreme court," and "in all other state and judicial district officers, by the governor." Section 105 provides that appointments under the provisions of this chapter shall be in writing and continue until the next election at which the vacancy can be filled, and section 107 provides that vacancies occurring in any state, judicial district, county, precinct, township, or any public elective office thirty days prior to any general election shall be filled thereat.

From these provisions it is clear that Judge Norval, the incumbent at the regular election for a full term of the office of district judge for the Sixth district, having resigned the office more than two years before the expiration of the term for which he was elected, it was competent for the governor to make an appointment to fill the vacancy for the time being; and the resignation having caused a vacancy more than thirty days before the general election of 1890, and that being the first general election occurring after the vacancy, it was to be filled within the plain provisions of sections 105 and 107 of the election law, at the first general election, and that the person so elected is the successor of Jerome H. Smith, and, upon his qualifying under such election, the term of office of Jerome H. Smith under his appointment by the governor will expire. This is deemed to be a sufficient answer to the proposition by counsel that there was no authority under the constitution and laws of this state for the election of a judge of the Sixth judicial district at the general election of November 4, 1890.

Before entering upon the examination of the third proposition, the second in the brief of counsel, I will call at-

tention to the fact that the elections provided for and reg-
ulated by the act, part of which we have considered, and
which constitutes a part of chapter 26 of the current com-
pilation, was originally passed in two divisions; the first,
of general elections, containing all the sections cited, and
the second providing for special elections. Such elections,
under the provisions of the act, can only be held to fill
vacancies occurring in the office of representative in con-
gress or members of the state legislature, and where the
body in which such vacancy exists will convene prior to
the next general election, in which case it is made the duty
of the governor to order a special election to fill such va-
cancy at the earliest practicable time, and ten days' notice
shall be given. It is thus apparent that special elections
are wholly eliminated from consideration in the case before
us.

The remaining question, and that most relied upon by
respondents, is presented in the brief as follows: "If con-
stitutional and statutory authority existed for the election
of such judge on that day—the general election of 1890—
in a proper case, yet the same could not be legally had
without a proclamation by the governor."

We have already considered that by a provision of stat-
ute the vacancy in the office of district judge, occurring
upon the resignation of Judge Norval in 1889, and tempo-
rarily filled by the appointment of Jerome H. Smith, was
to be permanenly filled by election at the next general
election occurring thirty days or more thereafter, which
general election was held on November 4, 1890, and at
which the relator claims to have been duly elected.

Section 11 of the general law provides that thirty days
prior to any election at which any state officer is to be
elected the governor shall issue his proclamation designat-
ing all the offices to be filled, by the votes of all the
electors of the state, or by those of any congressional, leg-
islative, or judicial district, and transmit a copy by mail

to the county clerks of each county, and sections 12 and 13 provide that at least twenty days previous to any election, the county clerk shall make out and deliver to one of the officers therein named, depending upon the system of organization, whether township or county prevailing, certain notices of election to be held, after the statutory form, and it is made the duty of such officers respectively to post the same of the number and at the places designated by statute.

It will be seen from an examination of the three sections last referred to, that section 11 is isolated and separate from the other two. The duties of the county clerk are not made to depend upon any provision of section 11, or upon the action or non-action of the governor under its provisions, and no other part of the election law interferes to shed any additional light on the construction of section 11. Undoubtedly it was the duty of the governor to issue his proclamation thirty days prior to the election, and to have designated therein all the offices to be filled at the election, and to transmit copies to the county clerks; and it is agreed by the stipulation in this case that, from oversight and inadvertence, he failed to perform this duty in this instance in regard to the office of district judge; but this oversight and inadvertence worked no suspension of the law, nor, had he failed to issue his proclamation, inasmuch as the duties of the county clerks were by no means dependent on the discharge of those of the governor, would the statute making it the primary duty of the clerks to issue the notices of election have been disregarded, but the notices would nevertheless been duly given to the public and would have fulfilled their object.

By reference to the stipulation it is seen that the county clerks were neither in theory or form dependent on the governor for knowledge of the fact that the appointment of Judge Smith was a temporary one, to terminate upon the election of a successor at the next general election, and

his due qualification for the office.   To give this information to the clerks and to the public was the only possible utility of the governor's proclamation, and as the information was common and notorious to both the county clerks and the public, the absence of it by proclamation worked no disability on either hand.

It would not be seriously contended that the election of the successors to the governor and the other state officers, at the general election, is constitutionally dependent on the proclamation of the governor; and why?  For the reason that such election was provided for by law at a general election.

We have already shown that the election of a district judge to fill the vacancy of the resignation of Judge Norval was equally provided for by law, and that the general election of the year 1890 was appointed by the statute as the time when the same should be had; but it is contended for and admitted that the election for governor and other state officers occurs every two years at the general election held in the even number of years, while the election of a judge to fill a vacancy only occurs upon contingencies. While this is true, and the provision of statute requiring the governor to issue his proclamation a certain length of time preceding an election at which a state officer is to be elected is one of convenience for the purpose of calling attention to the contingency, yet it is not believed that it touches the foundation of the right and power of the people, under the statute, to fill such vacancy at the general election designated by law.   Whether the people have executed their right doubtless may, in some instances, depend upon the fact of their having actual notice of the existence of a vacancy.

Respondents rely chiefly upon the authority of the case of *McKune v. Weller*, 11 Cal., 49, which in many of its features is analogous to the case at bar, but in point of important facts is distinguishable from it.  Without going

7

out of the facts of the case, it appears that by statute it was the duty of the governor of California to issue his proclamation the same length of time before each general election provided by our own statute, cited, designating the offices to be filled at such election, and the transmittal of a copy to the boards of supervisors of each county of the state; and by the same statute it was made the duty of the board of supervisors to give at least ten days' notice by posting at each place of holding election in the proper county a copy of such proclamation, and to insert the same in some newspaper published in the county, if any. The provisions of the statute of that state, requiring vacancies in the office of district judge to be temporarily filled by appointment by the governor and permanently by election, were substantially like those of our own statute, and the facts upon which the relator, McKune, claimed to have been elected to fill the vacancy occasioned by the resignation of Munson were substantially the same as those upon which the present relator claims the office. The argument and opinion of a majority of the court mainly turned upon the question whether the provisions of the statute, requiring the proclamation of the governor and the notice by the supervisors, were mandatory or directory merely; that court holding that the California statute was mandatory. The opinion is lengthy, discursive, and involved in paradox. The distinguishing contrast between the two cases is in the provision regulating the notice of election. The California law imposes no original duty upon the board of supervisors, nor upon any other county authority to issue notices of election, but provides that the board of supervisors shall give at least ten days' notice by posting, or causing to be posted, at each place of holding elections in the county, a copy of the proclamation, and insert the same in some newspaper published in the county, if any. It therefore was held in California that, there having been no proclamation by the governor, there was no notice of the

election of the officer.   In the case the principal effort of
the writer of the opinion seems to have been to separate it
and distinguish it from that of *The People v. Cowles,* 13
N. Y., 350, in which it was held that:

" Where the office of a justice of the supreme court be-
comes vacant before the expiration of his term of office,
the vacancy is to be supplied by the electors of the judicial
district in which it exists, at the next general election of
judges, although the vacancy occur at so late a day that no
notice is or can be given by the secretary of state or other
officer, pursuant to the statute, that a justice is to be elected
at such election to fill the vacancy.

"Accordingly, where the incumbent, whose term of office
would not have expired for several years, died on the
twenty-third day of October, and the electors of the dis-
trict at the general election of judges on the ensuing sixth
of November elected a person to fill the vacancy; held,
that the election was valid notwithstanding no notice was
given by the secretary of state that a justice was to be
elected to fill the vacancy at the election."

The question upon which both the California and New
York cases depend is that of notice to the electors.   Under
the California statute it is shown that there could be no
legal notice without the proclamation, the notice provided
being a copy of it, while under our statute the notice of
election is the subject and creature of the statute and is in-
dependent of any action of the chief executive, either by
proclamation or otherwise.

It may be further stated, as the general and accepted
rule of this court, that neither a general or special election
held at the time and place provided by law, and where the
election has been general, depends upon notice for its
validity.

The case of *State v. Skirving,* 19 Neb., 497, arose from
a disputed election to fill a vacancy in the office of county
commissioner of Holt county.   From the opinion of Judge

MAXWELL, after citing section 107, chap. 26, *supra*, it being conceded there was no notice of the election given, the opinion proceeds:

"As from the agreed statement of facts, it appears that the defendant removed from the Second district in March, 1885, being more than thirty days prior to the .election, it was the right and duty of the electors of said county to fill the vacancy at said election, and the exercise of this right does not depend upon the notice, or want of it, of the county clerk. In deciding this, however, we do not intend to go beyond the facts in this case. Here it seems to have been generally understood by the electors of the county that a vacancy existed, and they sought to fill said vacancy, nearly all those voting at that election casting their ballots for one of the candidates named.

" This, we think, was sufficient to show that the election was general and participated in by all the electors who desired to vote upon that question. What the rule might 'be had but a small percentage of the voters participated in the election is not before the court."

In the case of *Ellis v. Karl,* 7. Neb., 381, which was a contest for the relocation of the county seat of Saline county, under the law in force in 1878, which provided that notice of the time and places of holding elections for such removals shall be given in the same manner as provided by law for general elections for county purposes; that at least thirty days previous to the election notice thereof should be given by posting up three written or printed notices in each election precinct, Judge LAKE in the opinion says:

" But, notwithstanding the failure to give the full statutory notice, we do not think that the plaintiffs are in a situation to complain for the want of it. The only purpose which the notice could serve was that the question to be voted upon might be brought to the attention of each elector, and an opportunity afforded him to attend the

election and express his opinion concerning it through the ballot-box."

There are other cases to the same effect, none of which, however, involve the question of proclamation by the governor, but are confined to that of notice as such.

In the supreme court of Michigan it has been almost universally held that statutory provisions for the conduct of elections are directory only, excepting they be of a character that a failure of strict compliance would prevent or obstruct the free and complete expression of the public will, or satisfactory evidence to that effect. I quote from the syllabus in *People v. Hartwell*, 12 Mich., 508 : "The statute requiring notice to be given [of the election and the vacancy] is directory merely." This was followed in the case of *People v. Wetherell*, 14 Mich., 48; see also *People v. Sackett*, Id., 320; *People v. Cicott*, 16 Id., 283; *People v. Bates*, 11 Id., 362; *People v. Higgins*, 3 Id., 233; *Secord v. Foutch*, 44 Id., 89.

The same rule was held in Wisconsin in *Lutfring v. Goetze*, 22 Wis., 363, that "An election to fill a vacancy, however created, will not be held invalid merely because the statutory notice was not given;" but whether it should not be held invalid for want of actual notice to the body of voters was considered but not ruled upon.

In the case of *State, ex rel. Peacock, v. Orvis*, 20 Wis., 235, it was held : " In case of the death of a sheriff, the electors take notice thereof, and of the provisions of the constitution and statutes for the election of his successor, and although it is the duty of the under sheriff, acting as sheriff, in such a case, to order and give notice of the election of sheriff, as required by secs. 14 and 15, chap. 7, Rev. Stats., yet his omitting to do so will not render void an election of such officer at the general election next following the creation of the vacancy."

Many other authorities are cited by counsel for the relator from the courts of the foregoing and other states

not deemed necessary to reproduce, in citation, in a pro-
longed opinion.  The respondents contend that "neither
the constitution nor the statute fixed the election of 1890
as being the proper time to elect any officer the votes for
whom it was their duty to canvass.  Their notice had not
been officially called to any vacancy or any election respect-
ing which they had a duty to perform.  How can it be
said, they argue, that it was clearly their duty to assemble
and count the votes alleged to have been cast at that elec-
tion?"

We have shown that the statute does fix the general
election of 1890 as that for permanently filling any vacancy
occurring in the office of district judge at any time not
thirty days before the general election of 1889, and we
have seen that Judge Norval's resignation of December 12,
1889, created the vacancy.

It is such a matter of history that the court will take
judicial notice of the fact that such resignation was made
to the incumbent of the executive office, and that on the
day last mentioned the principal respondent as governor
appointed Jerome H. Smith to temporarily fill the office
made vacant, and that in the regular course of executive
duties such appointment was certified as official by another
of the respondents as secretary of state.  These officers at
least will be presumed to have known, and still to know,
that the judge thus appointed would hold his office only
until the next general election occurring more than thirty
days after the date thereof, which was the general election
of 1890.

Furthermore it appears that the returns of the election
under which the relator claims were duly made out, certi-
fied, and forwarded to the secretary of state within the time
provided by law, and were at the date of this application
deposited in his office as a part of the public records of the
state.

Upon these premises it will be held that it was the duty

of the respondents as the board of state canvassers to have met at the office of the secretary of state on the third Monday after the general election of 1890, which was held on November 4, last, and to have then and there made an abstract of the number of ballots cast for the office of district judge of the Sixth judicial district, the names of all persons voted for for that office, the number of votes each received therefor, and stating whom they declared to be elected, affixing their names and official capacities as a state board of canvassers thereto ; and it appearing that such official duty has not been performed by the respondents, a peremptory writ of *mandamus* will issue as prayed for by the relator.

WRIT AWARDED.

THE other judges concur.