STATE, EX REL. JOHN FITCH, APPELLEE, V. SAMUEL R. McFARLAND, COUNTY CLERK, ET AL., APPELLANTS.

FILED OCTOBER 30, 1915. No. 19025.

1. **County Commissioners: TERM OF OFFICE.** The official term of the office of county commissioner in counties not under township organization is four years. By the act of 1913 (Laws 1913, ch. 149, sec. 17, Rev. St. 1913, sec. 1955) it is provided that in counties having three commissioners two shall be elected in the year 1914 for a term of four years and one in 1916 for a term of four years.

2. ————: **ELECTION: VALIDITY: NOTICE.** The failure to give the statutory notice of election of county commissioner will not of itself invalidate an election. But, if it appears that such failure has prevented the electors generally from voting upon a question, it cannot be held that there has been an election upon that question.

REHEARING of case reported, *ante,* p. 198. *Former judgment of reversal and dismissal adhered to.*

SEDGWICK, J.

By our former decision in this case, *ante,* p. 198, the judgment of the district court was reversed and the action dismissed. The nature of the case is there stated.

It appears that in Madison county a commissioner had been elected for the first commissioners' district in 1905, 1908 and 1911. The statutes, and perhaps some of the court decisions, were in confusion, and the officers and people of Madison county considered that the term of office of county commissioner in counties not under township organization and having three commissioners was three years. At that time the general election law contained the provision: "One county commissioner shall be elected annually, who shall serve three years." Laws 1911, ch. 43. This clause should be disregarded, for the reasons stated in *Saling v. Bahensky,* 97 Neb. 789, but it tended to mislead many county officials. The term of this office is four years. *Best v. Moorhead,* 96 Neb. 602; *Saling v. Ba-*

*hensky, supra; Calling v. Gilland,* 97 Neb. 788. The election is held in the even numbered years. In the act of 1913 the above quoted clause was omitted from the election laws, and it was definitely provided: "Two commissioners shall be elected in the year nineteen hundred and fourteen and every fourth year thereafter, and one commissioner shall be elected in the year nineteen hundred and sixteen and every fourth year thereafter." Laws 1913, ch. 149, sec. 17 (Rev. St. 1913, sec. 1955). This change expressed the legislative construction of the former conflicting statutes, and two commissioners should have been elected in Madison county in 1914. This change in the statute was overlooked in *Best v. Moorhead, supra.* Mr. Purdy had not been elected for any term allowed by law, and was therefore an officer *de facto,* and as such will hold until the next election, when his successor will be elected for the remainder of the term, which expires in January, 1917.

The question is: Was there an election held for county commissioners in the first district of Madison county in the year 1914? It is conceded that there was no official notice of such an election. If, however, an election should have been held at that time, and was in fact held, it could not be disregarded because of a failure to give the official notice. This was definitely determined in *State v. Skirving,* 19 Neb. 497. The law is stated in the syllabus: "Where a vacancy occurs in the office of county commissioner more than thirty days before a general election, it is to be filled thereat; and the failure of the county clerk to call attention to such vacancy in the election notices posted by him, where the fact is generally known and acted on by the voters of the county, will not invalidate the votes cast to fill said vacancy." The opinion recites that the highest number of votes cast at the election in question was 3,124, and that 2,989 votes were cast for the candidates for the particular office in question, and adds: "This shows that it was generally understood in that county that a vacancy existed, and that the candidates named were balloted for to fill said office." This question as to what really constitutes an

election is again considered in *State v. Thayer,* 31 Neb. 82. In the opinion it is said, with approval, that in Michigan it is held that "statutory provisions for the conduct of elections are directory only, excepting they be of the character that a failure of strict compliance would prevent or obstruct the free and complete expression of the public will, or satisfactory evidence to that effect." It appears from the opinion that the votes cast for the office of judge of the sixth judicial district at the election there in question were 12,455, of which the relator received 7,612, and that there were only 279 voters at the election that failed to vote upon that question. In the case at bar (as appears from those parts of the return which were stricken out by the court, and which must therefore now be regarded as true) the county officers considered that no election was to be held for the office in question; no such office was included in the ballot at the primary election, and no nomination made thereat. No such office was named on the election ballot, and no blank space was left for inserting the name of any candidate for such office. There were more than 4,000 voters in Madison county, and 3,621 voted at the general election in 1914. One hundred five voters wrote the name of the relator on the ballot and voted for him. Two other voters appear to have expressed a choice for this office. In only 5 out of 25 precincts of the county were any votes cast for county commissioner. It appears to have been notorious that the county officers had declared that there was to be no election of county commissioners at that election, and from the votes cast it is manifest that it was generally so understood. The authorities generally are that such a proceeding does not constitute an election, and the opinions in *State v. Thayer, supra,* and *State v. Skirving, supra,* indicate clearly that such proceedings could not be held to constitute an election in this state.

The relator suggests that the action of the county officers, in declaring that there would be no election of county commissioners at that election, and in refusing to provide for such election, was resisted by some, and that a political committee declared that there would be such an elec-

tion and caused this declaration to be published in certain papers. This would tend to show notice to the electors and might arouse some interest among them. Such evidence is entirely overcome by the other circumstances, and by the fact that so few participated in the election.

The conclusion of our former opinion is therefore right, and is adhered to.

JUDGMENT ADHERED TO.

HAMER, J., not sitting.