SIMEON J. THOMPSON ET AL., APPELLANTS, V. CHARLES H. JAMES ET AL., APPELLEES.

FILED MARCH 3, 1934. No. 28836.

GOOD, J., dissenting.

This is an action in the nature of *quo warranto* in which relators claim to be duly elected and qualified members of the county board of supervisors of York county, and that they have been wrongfully excluded from their official positions by respondents, who have usurped the offices of relators. The district court sustained a demurrer to relators' petition, and dismissed the action. This court reversed the judgment of the district court in an opinion appearing, *ante*, p. 350. Later, a reargument of the cause was had on motion for rehearing, and the opinion was adhered to by a majority of the court.

I did not participate in the original adoption of the opinion and cannot concur in the views therein expressed. The question presented is whether the electors of York county, by their ballots, have changed the number of supervisors from twenty to five. The proposition to change the number of supervisors from twenty to five was submitted on the ballot to the voters at the general election, and a 'majority of the electors voting thereon was in favor of reducing the number to five.

Relators contend that the election was void because the form of the proposition on the ballot was not that prescribed by the statute, and also because the proposition

was not placed upon the ballot on which were printed the names of candidates for office. For a more detailed statement of the facts, reference is made to the majority opinion. The form of submitting the proposition, as prescribed by statute, and that used by the county clerk are both set out in the majority opinion and will not here be repeated.

Due consideration of the question requires some reference to other statutes than the one quoted in the majority opinion. By the provisions of section 26-201 to section 26-204, Comp. St. 1929, provision is made for adopting township organization and for the election of seven supervisors. By the provision under which the election was held in going from supervisors elected by township to supervisors elected by district, the number of supervisors is fixed at five, so that there is statutory provision for both seven and five supervisors in a county. Probably in order to avoid any confusion as to whether the number should be five or seven, the county clerk placed upon the ballot the proposition, for reducing the number of supervisors from twenty to five and against the same proposition. In the majority opinion it is suggested that township supervisors and district supervisors are entirely distinct offices. We think this is an error. The supervisors, whether elected by township or by district, are essentially county officers. Their salaries are paid by the county. They have no duties to perform save as members of the county board of supervisors. They are as much county officers as members of the legislature are state officers, although elected by districts, and it is immaterial whether the district consists of a township or of several townships. The supervisors are, in fact, county officers and have the same duties to perform, regardless of whether the number is five, seven or even twenty, as was the situation in York county.

It is a rule that, where the statute prescribed the form in which a proposition should be submitted to the electors, such form should be followed and will be required

by the court, if timely application is made therefor. Had the aid of the court been invoked prior to the election, no doubt the county clerk would have been required to place the statutory form on the ballot. It is also a well-recognized rule that mere irregularities in the form of submitting a proposition to the electors will not vitiate the election and render nugatory the will of the electors, unless the proposition, as submitted, does not fairly submit to the voters in an intelligent form the proposition on which they are to vote.

In *Ellis v. Karl,* 7 Neb. 381, it was held: "In ordering an election on the question of the relocation of a county seat, thirty days' notice is required. But even if the notice be for a less time than this, a court of equity will not, for this reason alone, declare the election void at the suit of a party who participated therein, especially where it is not shown that a different result would probably have been obtained if the full statutory notice had been given."

In *State v. Thayer,* 31 Neb. 82, it was held:

"The provision of law requiring the governor, thirty days previous to an election at which any state officer is to be chosen, to issue his proclamation therefor is directory merely.

"Under our Constitution and laws the elective franchise is vested in the electors, and its exercise regulated by law. It is not deposited in the executive to be doled out by proclamation."

In *State v. McFarland,* 98 Neb. 854, it was held: "The failure to give the statutory notice of election of county commissioners will not of itself invalidate an election. But, if it appears that such failure has prevented the electors generally from voting upon a question, it cannot be held that there has been an election upon that question."

In *Tutt v. Hawkins,* 53 Neb. 367, it was held: "The intention of an elector must be ascertained from his ballot, and any inaccuracies in the preparation of such

ballot cannot be urged for the first time after an election, to defeat the clearly expressed intention of the voter."

In *Rideout v. City of Los Angeles,* 185 Cal. 426, it was held: "Where violations of directory provisions of an election law are not so gross or radical as to give rise to a presumption of unfairness, the burden is upon the contestant to prove that unfairness resulted from such violations."

In *Baldauf v. Gunson,* 90 Colo. 243, the supreme court of Colorado said (p. 245): "The power to reject election returns should be exercised with great caution and only as a last resort."

In 9 R. C. L. 1061, sec. 77, it is said: "Since the purpose of the statutes in reference to the preparation of ballots is to prevent fraud and secure freedom of choice, they should not by technical obstructions make the right of voting insecure. Statutes are binding on the officers for whose guidance and direction they are needed, and so far as their provisions affect the officers and their decisions they are mandatory and must be enforced. But if any irregularities occur in an official ballot due to the error or mistake of an election officer, it is the rule that they do not vitiate the vote of an elector innocent of any wrong in the matter."

Among other cases more or less in point are the following: *State v. Skirving,* 19 Neb. 497; *State v. Russell,* 34 Neb. 116; *Spurgin v. Thompson,* 37 Neb. 39; *Bingham v. Broadwell,* 73 Neb. 605; *Griffith v. Bonawitz,* 73 Neb. 622; *Gauvreau v. Van Patten,* 83 Neb. 64; *White v. Slama,* 89 Neb. 65; *State v. Grimm,* 115 Neb. 230; *Shaw v. Stewart,* 115 Neb. 315; *State v. Sheets,* 119 Neb. 145.

I submit that the question before the electors of York county was whether they should have a county board consisting of twenty members, or a county board consisting of five members. In essence, it means: Shall the will of the electors of York county, duly expressed by ballot at an election, be overthrown or thwarted simply because the county clerk did not place upon the ballot the

precise form prescribed by statute? As submitted upon the ballot, the proposition was clear and certainly could mislead no one. The statutory form could not have enlightened the voters any more than the form that was used. In this connection it should not be overlooked that a great saving would be made to the taxpayers in the expenses of the county government. The voters desired to curtail the expense of the county government and showed their desire by their ballots. Neither the relators nor any person who was opposed to reducing the number of supervisors from twenty to five challenged the form until after the election. They were evidently satisfied with the form in which it was submitted on the ballot. They were willing to do battle on the question as submitted and take the chances of winning. If the vote had been in their favor the county would still have had twenty supervisors. Now that they have lost, they seek to win upon the theory that the election was invalid because the statutory form was not used on the ballot. To even suggest that the form used on the ballot was misleading to the electorate is to cast an unwarranted aspersion upon the intelligence of the electorate of York county. The form used gave them as full information as the statutory form would have given. There is nothing to show that any elector was misled. There is no charge that any one was misled.

In the opinion it is suggested that it was an irregularity not to place the proposition upon the ballot on which were printed the names of candidates for office. On reargument that position was abandoned, and relators practically concede that there was no merit in that contention. Moreover, the ballot upon which the proposition was submitted was a regular ballot, required by statute. It was on the ballot together with a proposition for adopting a law by the initiative. That ballot was as regular as the one containing the names of candidates for office. The fact that 3,186 electors voted to reduce the number of supervisors from twenty to five, while 3,019 voted

against the proposition, shows that the question was given great consideration by the electors of York county. A majority of the electors have shown by their ballots that they desire to reduce the expenses of the county government by reducing the number of supervisors. Their will should not be overthrown nor thwarted by reason of a trifling error on the part of the county clerk.

I submit that the judgment of the district court is right and should be affirmed.

PAINE, J., concurs in this dissent.