RODWELL v. ROWLAND.

(Filed March 28, 1905).

*Clerk of Superior Court—Vacancy—Tenure of Appointee—Elections—Dicta—Stare Decisis.*

1. Under Article IV, section 29, of the State Constitution, which provides that in case of a vacancy in the office of the Clerk of the Superior Court the Judge shall appoint to fill the vacancy "until an election can be regularly held," the appointee of the Judge holds only until the next election at which members of the General Assembly are chosen, and an election held at the general election in November, 1904, to fill a vacancy occurring in September, 1904, is legal, without any special legislation; Article IV, section 16, of the Constitution, which provides that a Clerk shall be elected "at the time and in the manner prescribed by law for the election of members of the General Assembly," being self-executing. (*Deloatch v. Rogers*, 86 N. C., 357, overruled).

2. The reasoning, illustrations and references contained in the opinion of a court are not authority or precedent; but only the points arising in the particular case and which are decided by the court.

The maxim *stare decisis* discussed.
BROWN, J., dissenting.

ACTION of State on relation of James R. Rodwell against Oliver L. Rowland, heard by *Judge James L. Webb,* at chambers, by consent, on December 22, 1904, upon a case agreed.

This is an action in the nature of a *quo warranto* to try the title to the office of Clerk of the Superior Court of Warren County, and was heard by *Webb, J.,* holding the courts of the

RODWELL *v.* ROWLAND.

Second Judicial District, upon a case agreed, which is in substance as follows:

In November, 1902, W. A. White was elected Clerk for four years from December 1, 1902. He qualified and held the office until September, 1904, when he resigned. The Judge of that district then appointed the defendant to the office, in terms providing that he should "fill the unexpired term of W. A. White." The defendant accepted the appointment and qualified by taking the oath and giving an official bond for the term ending the first Monday of December, 1906, at which time White's term would have expired if he had remained in office. "At the general election held in the county of Warren on November 8, 1904, for members of the General Assembly, for State, county and township officers, for members of Congress and for electors for President and Vice-president of the United States, a Clerk of the Superior Court for the county of Warren was voted for, and James R. Rodwell, the relator herein, a citizen and resident of said county, received a majority of the votes cast for such officer, and upon a canvass of the votes cast at such election the board of county canvassers of said county did judicially determine and proclaim that the said Rodwell, the relator herein, had received a majority of the votes cast for such office and was elected as such Clerk of the Superior Court of Warren County. The said Oliver L. Rowland did not participate in or consent to the election of a Clerk of the Superior Court for the County of Warren, but contended that no election for Clerk of the Superior Court of said county could be held in the year 1904 according to law; and pursuant to such contention, said Rowland, through his attorney, appeared before said canvassing board and objected to the counting of any votes cast for any one for Clerk of the Superior Court for said county."

On the first Monday of December, 1904, both relator and

defendant tendered their official bonds to the board of commissioners of the county who accepted the relator's, and rejected the defendant's solely upon the ground that he was no longer entitled to hold said office and not because the bond was in any respect insufficient. Relator thereupon duly qualified as Clerk of the Superior Court "and was declared by said board as inducted into the office." Relator duly demanded the possession of the office, but defendant refused to surrender the same and still claims said office and is exercising its duties and functions. Relator, having first obtained leave from the Attorney-General, brought this suit to recover the said office. All questions of accounting for fees and emoluments, if relator is adjudged to be entitled to the office, are reserved in the case agreed for future determination. At the hearing the Judge gave judgment for defendant. Relator excepted and appealed.

*W. A. Montgomery* and *Pittman & Kerr,* for the plaintiff.
*B. G. Green, Hawkins & Bickett* and *Tasker Polk* for the defendant.

WALKER, J., after stating the facts. The question presented in this case is whether the relator was duly chosen to the office of Clerk of the Superior Court at the general election held in November, 1904. The defendant contends that he was not, for two reasons: First, because there was no vacancy in the office to be filled at that election, and second, because, if there was such a vacancy, the Legislature had not made any provision whatever for filling it. The first of these reasons is based necessarily upon the assumption that when *Judge Peebles* appointed the defendant, Oliver L. Rowland, to fill the vacancy caused by the resignation of the former Clerk, W. A. White, the appointment, under the provisions of the Constitution, was for the unexpired term of White, and

not merely until some one could be chosen at the next general election to fill the vacancy. The second of the above-stated reasons presupposes that if, by the terms of the Constitution, the defendant held by virtue of the appointment of *Judge Peebles* only until his successor could be chosen at the next general election, the provision of the Constitution is not self-executing and no election could be held, although plainly required by the supreme law, without some affirmative action by the Legislature.

In order to test the correctness of the defendant's contention and the validity of his reasons therefor, we are called upon to perform the delicate and often difficult duty of construing the Constitution, for whatever is therein ordained, as we may construe it, becomes the supreme law of the State. The relator of course contends that the vacancy created by the resignation of W. A. White was required to be filled at the general election in 1904, and if there has been no special legislation adequate for the purpose of executing the will of the people, as thus expressed in their Constitution, that instrument itself provides sufficiently for such an election, especially when considered in connection with the general election laws of the State, and is therefore self-executing. We will now examine these several and conflicting views and determine which of them is the correct one.

The Constitution provides in Article IV as follows: Section 16. A Clerk of the Superior Court for each county shall be elected by the qualified voters thereof, at the time and in the manner prescribed by law for the election of members of the General Assembly. Section 17. Clerks of the Superior Courts shall hold their offices for four years. Section 24. Sheriffs, coroners and constables shall be elected by popular vote and shall hold their offices for two years, and "in case of a vacancy existing for any cause, in any of the offices created by this section, the commissioners for the

county may appoint to such office for the unexpired term."
Section 28. When the office of justice of the peace shall be-
come vacant otherwise than by expiration of the term, and in
case of a failure by the voters of any district to elect, the
Clerk of the Superior Court for the county shall appoint to
fill the vacancy for the unexpired term. Section 29. In
case the office of Clerk of a Superior Court for a county shall
become vacant otherwise than by the expiration of the term,
and in case of a failure by the people to elect, the Judge of
the Superior Court for the county shall appoint to fill the
vacancy until an election can be regularly held.

These extracts from the Constitution will suffice to show
what has been ordained with respect to offices, the vacancies
in which are not filled by appointment of the Governor.
The appointees to vacancies in offices, which are so filled by
appointment of the Governor, hold their places by the ex-
press provisions of section 25 until the next regular election
for members of the General Assembly, when elections are re-
quired to be held to fill such offices. Indeed, it is suggested
that this provision of section 25 of Article IV extends to all
offices created by that article, when the term of the appointee
to a vacancy is not otherwise expressly and definitely fixed,
if the words "unless otherwise provided for" are understood
as referring only to the method of appointment and not as
excepting vacancies not filled by the appointment of the Gov-
ernor from the operation of that section, and the words "ap-
pointees" in the next line as embracing not only those who
have received their appointment from the Governor but also
those whose appointments may have emanated from some
other source designated in that article. We express no opin-
ion as to the meaning of that section, preferring not to rest
our decision upon its construction, as we think the case can
well be decided without any reference to it, although if the
construction, which has been suggested, were adopted, the

case would necessarily be decided against the respondent, as we would then have a direct and unequivocal command that the election to fill a vacancy in the office of Clerk shall be held at the next regular election for members of the General Assembly after the vacancy occurred. We have referred to that section only for the purpose of emphasizing the leading idea of the Constitution of 1868, as amended by the Convention of 1875, that appointees to elective offices should not hold their places any longer than is required for the people again to exercise their right of choosing such officers at the polls and that they should be permitted to do so at the earliest opportunity that can be afforded for that purpose. This intent pervades the entire instrument, and when, as we shall presently see, the appointee is permitted to hold for the unexpired term, the intention to do so is expressed in plain and unmistakable language and is confined to those offices the incumbents of which hold for only two years, during which time under our system of elections there is no provision for a regular election, and no election can intervene between the occurrence of the vacancy and the next regular election for a full term. We were told by counsel who argued for the relator that there was more reason for preserving the elective feature in filling a vacancy in the office of Clerk since than before 1868, as the Clerk, prior thereto, had little or no jurisdiction of any kind and no judicial functions save in the probate of deeds, being merely the hand of the Court for registering its orders and decrees and safely keeping its papers and records, while by the Constitution of 1868 he has been invested with very many and important powers and quite an extensive jurisdiction, so to speak, having immediate charge of those particular matters which bring him frequently in close touch with the people and which affect vitally their most valued interests; that his powers are not simply ministerial, but, within the broad limits of his jurisdiction, he

possesses some judicial functions of a very serious nature
and in the exercise of which the citizen is as much concerned
as if his office were of a higher dignity.  And all of this is
very true and should have its proper weight with us in giving
our construction to the Constitution.  It may also be added
to what is thus suggested that "when the duration of the
term of office which is filled by popular election is in doubt
or uncertainty, the interpretation is to be followed which
limits it to the shortest time, and returns to the people at
the earliest period the power and authority to refill it."
Opinion of the Judges, 114 N. C., at p. 929.

    These general observations will perhaps enable us the bet-
ter to interpret the meaning intended to be conveyed by the
sections of the Constitution which we have quoted.  Our first
inquiry must be, what is meant by the words in section 29,
"the Judge shall appoint to fill the vacancy until an election
can be regularly held"?  It must be borne in mind that this
is not a provision for choosing an incumbent for the full
term, who would of course hold until the expiration of that
term, but to supply a vacancy by appointment until the peo-
ple can have an opportunity in the regular way of choosing
some one to fill that vacancy.  If it was contemplated that the
appointee of the Judge should hold for the unexpired term
and therefore until the regular election for the full term, it
was all-sufficient to provide simply that the Judge should ap-
point to fill the vacancy, for this would have clearly and fully
pressed that idea without the use of any words of restriction
or limitation.  The vacancy, nothing else being said, would
comprise all of the time between the appointment and the
expiration of the term.  But the framers of the Constitution
evidently intended that the words "until an election can be
regularly held" should apply to an election to be held short
of the time when the full term would expire, and to an elec-
tion which could be held regularly or, what is the same thing,

according to rule or to the manner prescribed by law, whether that law be found in the Constitution or the general statutes relating to elections.   It then comes to this: was there at the time this election for Clerk was held any rule or law by which it could be conducted, or, in other words, was there any machinery provided by which an election could be regularly held?   We think there was.   The Constitution, Article IV, sec. 16, ordains that a Clerk of the Superior Court shall be elected by the qualified voters of the county "at the time and in the manner prescribed by law for election of members of the General Assembly."   Here is a plain and adequate method provided for the election of Clerks, and indeed the only method.   When therefore it was ordained that vacancies should be filled by appointment of the Judge until an election could be regularly held, it meant necessarily an election held and conducted as pointed out by the Constitution, that is, one held at the time and in 'the manner prescribed for the election of members of the General Assembly, and that election would of course be the next election for such members.   Does not such an election fulfill all of the requirements of the Constitution, and is not the procedure thus provided sufficient for the purpose of obtaining a free and full expression of the popular will at the ballot-box?   What more was required to be done in order to accomplish that purpose?   The Legislature in providing for filling vacancies in some of the executive and in the judicial offices of the State has done no more than has the Constitution in the case of Clerks of the Superior Courts.   It merely provides, as the Constitution does, that the person to fill any such vacancy shall be elected at the same time and in the same manner as members of the General Assembly, that is, at the next general election, as members of the General Assembly are elected every two years.   The provision therefore is no broader in its scope than that of the Constitution relating

to the same matter.   Acts 1901, chap. 89, sec. 4 (Election
Law).   If the Legislature had made provision for an election
to fill a vacancy in the office of Clerk, it could have done no
more than to require that a Clerk should be chosen in like
manner and under the same rules and regulations as mem-
bers of the General Assembly at a general election, which,
as we have said, is all that it has done in the case of other
vacancies.   The provision of the Constitution is therefore
sufficient for the intended purpose, and self-executing, and
whenever there is a vacancy in the office of Clerk it may be
filled at any general election next occurring, at which mem-
bers of the General Assembly are chosen.   It is true that the
Act of 1901, chap. 89, sec. 4, requires that a vacancy in any
State, executive or judicial office must occur more than
thirty days before the next election in order that it may be
filled at that time, and if we concede that the provision should
by analogy apply to vacancies in the office of Clerk, it so hap-
pens that in this case the office was vacated more than thirty
days prior to the general election of 1904.

There are other considerations which lead us to the con-
clusion that the constitutional provision refers to the next
election at which members of the General Assembly are by law
required to be chosen, but it is unnecessary to discuss them
here.   It will be observed, though, when we read the Consti-
tution, that in every instance where the term of office is only
for two years and there can be no general election before the
expiration of the term, it is provided that the appointee to
fill a vacancy shall hold for the unexpired term.   This is
true notably in the case of sheriffs, coroners, constables and
justices of the peace.   Const., Art. IV, secs. 24 and 28.   But
when such an election will by law intervene between the
occurrence of the vacancy and the expiration of the term of
the next election for the full term, it is provided expressly
in the cases of Justices of the Supreme Court, Judges of

137——40

the Superior Courts and Solicitors, that the vacancies shall
be filled by appointment of the Governor, the appointees to
hold until the next regular election for members of the Gen-
eral Assembly, when said vacancy shall be filled by election.
(Article IV, secs. 21, 23 and 25).   And, in respect to va-
cancies in offices of the State Executive Department, which
offices are held for four years, it is provided that if the office
of Governor shall become vacant the Lieutenant-Governor,
who is elected by the people, as the successor to the Governor,
shall fill that office, but in case any other office in that depart-
ment becomes vacant, such as the office of Secretary of State,
Auditor, Treasurer, Superintendent of Public Instruction
and Attorney-General, the Governor shall appoint to the va-
cancy and the appointee shall hold, at least if the vacancy was
caused by death or resignation and not merely by disability
of the former incumbent, until the vacancy can be filled at
the first general election, the person chosen at said election
to hold "for the remainder of the unexpired term."   Const.,
Art. III, secs. 12 and 13.   As the office of a Clerk is four
years and a general election may be held under the law after
a vacancy has occurred and before the expiration of the term,
we do not see how we can escape the conclusion that it was
intended by the words in section 29 of Article IV of the Con-
stitution, namely, "the Judge shall appoint to fill the vacancy
until an election can be regularly held," that the vacancy
should be filled at the next election at which members of the
General Assembly are chosen.   The counsel for the respond-
ent contend that the case of *Cloud v. Wilson,* 72 N. C., 155,
is an authority against the conclusion we have reached.   We
do not concur in this view.   The language there under con-
sideration was different from that we are now construing.   It
would be useless to review that case at any length to ascer-
tain if what is there said conflicts with our understanding of
the true meaning of the clause of the Constitution which was

then construed.   It is sufficient to say that the Court 'in
*Cloud v. Wilson* laid great stress upon the fact that Judges
of the Superior Court had been. divided into classes by the
Constitution, and that a decision in favor of the respondent
might produce great confusion in that classification; and,
besides, the decision is based in part upon what we conceive
now to have been an erroneous assumption, namely, that if
a Judge should be chosen to fill a vacancy at the next elec-
tion he would hold for a full term, and not merely for the
unexpired term, and consequently the classification made by
the Constitution would be disturbed.   We believe the great
weight of authority is to the effect that a person so elected
will hold only for the unexpired term, and this view of the
law we deem to be more consonant with reason than the
other.   Opinion of the Judges, 114 N. C., 925.   It is not
our purpose to overrule *Cloud v. Wilson,* for the decision of
the case at bar, when rested upon the principles and reasons
stated herein, does not require it.   We do not agree with all
that is therein said by the Court, and it remains to be stated
that the Convention of 1875 seems to have thought that the
Court had not construed the Constitution according to its
spirit and the intention of its framers, for it amended the sec-
tion then under consideration so as to require all vacancies in
the office of Judge of the Superior Court to be filled, first, by
appointment of the Governor, and, afterwards, at the next
election by the people for the unexpired term.   This is in
accordance with the true principle of our government that
the people should have the power and the right to determine
how and by whom they shall be governed, and this includes
the right not only to select their officers originally but to do
so as soon as it can conveniently be done, when any of the
offices become vacant and it can be done regularly, that is,
with due regard for the forms of the law and the requisite
procedure; and we should not be too strict and technical in

our interpretation of the Constitution, lest we thereby unduly deprive them of this natural and fundamental right, but, on the contrary, we should be liberal in our construction with the view of preserving that right to the people unimpaired and undiminished, except in so far as the exigencies of the case may require a temporary filling of the vacancy by appointment.

We have not adverted to the fact that section 28 relating to a vacancy in the office of justice of the peace and section 29 relating to a vacancy in the office of Clerk are identical in language, except that in the former instance the vacancy is filled "for the unexpired term," while in the latter it is filled "until an election can be regularly held." This change in phraseology was not accidental, but it was intended, we think, that the concluding words of the two sections should have different meanings and for the very reasons we have already given, that in the case of the justice an election would not be held, whereas in that of the Clerk one would be held, before the expiration of the term.

We are not without strong authority to sustain our conclusion.

In the case of *State v. Johns,* 3 Oregon, 533, the provision of the Constitution which the Court construed was that the Governor should fill the vacancy by appointment, which should expire when a successor shall have been elected. It was contended that the appointee held until the next regular election for the full term, but the Court decided that the vacancy should be filled at the next general election. In a well-considered and able opinion the Court among other things says: "It is not reasonable to presume that, where the people have reserved to themselves the appointment of an officer, they would confer on the Executive the filling of a vacancy in the office which would extend the time of the appointee beyond a general election and deprive the whole peo-

RODWELL *v.* ROWLAND.

ple of a county from electing their own local officer when they could fill it as conveniently as they appointed the original incumbent. It is a political axiom that when an office becomes vacant the power that made the office can fill it again. If the people have surrendered that power, it should be by express and unequivocal words. The words are: 'The Governor may fill the vacancy until a successor is elected.' Vacancy in an office means the want of an incumbent at the time. It has no reference to duration of time, and the appointment of a person to fill a vacancy *pro tempore* does not invest him with a full term unless the law so expressly provides. Vacancy in an office is one thing, and term is another." So in *State v. Conrades,* 45 Mo., 45, in construing words substantially similar to those used in our Constitution, the Court says: "The Act of 1864 was a limitation on this power of appointment and abridged its exercise to the next regular election. It is insisted now that in passing this law the Legislature meant that the executive appointee should continue to hold his office till the next regular election of county judges, and that the act had exclusive reference to that election. But this construction, we think, is founded in misconception and is not maintainable. It was the obvious intention to give the people an opportunity to elect this officer at the earliest practicable moment, without incurring the expense of a special election. When applied to elections, the terms 'regular' and 'general' have been used interchangeably and synonymously. The word 'regular' is used in reference to the general election occurring throughout the State." Construing a clause of the Constitution which provided that the appointment by the Governor to fill a vacancy should be until the next election, the Court in *Weeks v. Gamble,* 13 Fla., 9, said it is plain that the election contemplated is the next election after the vacancy and not the election which is to be held to fill a new term. It is an

election to fill the balance of the unexpired term and not an election to fill the full term, which takes place, without reference to the vacancy, under a law having nothing to do with the subject of vacancies. The power to fill the unexpired term is a part of the original power of the people to select. It is therein declared that a construction, which would postpone the election to fill the vacancy beyond the time appointed by law for holding the next general election, would be inconsistent with the true spirit and intent of the Constitution and opposed to the fundamental and vital principles of republican government. To the same effect are *Taggart v. State,* 49 Ind., 42; *State v. Lansing,* 46 Neb., 514; *Rice v. Stevens,* 25 Kan., 302; *State v. Orvis,* 20 Wis., 248; Op. of Judges, 25 Fla., 426; *People v. Mott,* 3 Cal., 502; *State v. Cowles,* 13 N. Y., 350; *State v. Thayer,* 31 Neb., 82, and *State v. Mechem,* 31 Kan., 435, in which the Court says: "It is the general policy of the Constitution that the people elect the officers. The theory of our law is that officers shall be elected whenever it can conveniently be done, and that appointments to office will be tolerated only in exceptional cases." It is further said to have been decided in *Rice v. Stevens, supra,* that "the appointee by the board of county commissioners to fill a vacancy caused by the resignation of a county clerk would hold his office under the appointment only until the next general election," and the same rule was applied to the case then under consideration, as the language to be construed was the same.

In the people resides the right of selecting their officers, and the appointing power should not be permitted to extend in its operations beyond the particular exigencies and requirements of the case. Appointment is a temporary expedient devised to keep the office filled until the people have the first opportunity to exercise the right to fill it, which must needs be at the next general election, and this right

should not be abridged by any construction which postpones its exercise to the election for the next term.

We have already shown that an appointee to a vacancy does not hold for a full term, and it hardly requires argument or the citation of authority to show that section 17 of Article IV of the Constitution, so far as it fixes the duration of a full term, has no bearing upon the question of filling a vacancy, but is quite foreign thereto. *Haggarty v. Arnold,* 13 Kansas, 367. The decision of this case, as to the time of filling a vacancy, must turn upon the construction of those sections of the Constitution relating strictly to vacancies. If an election, at which members of the General Assembly were chosen and the machinery of which was all-sufficient for a fair and free expression of the popular choice, was not one regularly held within the meaning and intent of the Constitution, we cannot imagine what more was required to make it so. The leading idea in the use of the words "until an election can be regularly held" was to give the people the chance to fill the vacancy just as soon as an election should occur, which would be held and conducted according to the requirement of section 16, namely, "at the time and in the manner prescribed by law for the election of members of the General Assembly." Any other construction would be strained and unreasonable and deprive the people unnecessarily of the constitutional right to choose their officers. Suppose the Legislature had omitted to provide for filling vacancies in the offices of the Judicial Department, could it be said that the people had no power to elect and that the appointees must hold over, although the Constitution positively requires that such vacancies shall be filled at the next regular election for members of the General Assembly? We think not, and yet there is no substantial difference between the supposed case and the one now under consideration. The Constitution in both cases prescribes the method of filling offices by election,

RODWELL *v.* ROWLAND.

and there is no sound reason why the same method should not apply to filling vacancies. Mechem on Public Office and Officers, sec. 183.

We will next consider the contention that there has been no legislation providing for an election to fill a vacancy in the office of clerk. This question has received some attention in what we have already said. It certainly is not absolutely necessary that there should be any special legislation upon the subject, if the Constitution furnishes sufficient machinery in itself or in connection with the general election laws to secure a fair election. The failure of the Legislature to act in obedience to the Constitution in the particular case, if it be requisite that it should act, cannot be permitted to defeat the right of the people to elect their officers, provided the machinery is otherwise sufficient for the purpose of affording them that right. The principle herein asserted that the Constitution is self-executing and that its provisions, if not in themselves sufficient for the purpose of holding an election at which the people may choose their Clerk (and we have shown that they are), may be supplemented by such parts of the general election law as are applicable to the election of clerks at regular or stated intervals or of members of the General Assembly, and that an election held in substantial accordance with such law will be valid, is fully sustained in an able opinion by *Judge Brewer* (now a Justice of the Supreme Court of the United States) in *State v. Thoman,* 10 Kansas, 191. Referring to the same subject *Judge Cooley* says: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." Cooley Const. Lim. (7 Ed.), 121. The rule supplied in our case is that furnished by the law for the election of members of the General Assembly. A learned and exhaustive discussion of this question will be found in *State v.*

*Burbridge,* 24 Fla., 112, where it is held that, whenever a power is given by law, everything necessary to the effectual execution of the power is given by implication, and therefore the failure of a statute to declare the mode of proceeding at an election ordered by it does not defeat its purpose; and further, that it is the duty of a court to sustain an election authorized by law if it has been so conducted, according to the general law, to give a free and fair expression to the popular will, and so that the actual result thereof is clearly ascertained. Likewise, in *Wells v. Taylor,* 5 Mont., 202, it was held that where the law authorizes an election, even though it be a special one, but provides no method of holding it, the election is good if conducted according to the general law on the subject, whether any reference be made to the general law or not. And this is the general doctrine, says *Judge McCrary* in his work on Elections (3 Ed.), sec. 161. To the same effect is *People v. Dutcher,* 56 Ill., 144.

It was contended before us that legislation is required in order to give notice to the voters that a vacancy will be filled at the election. The great weight of authority is directly opposed to this contention. "It has therefore been frequently held," says *Judge Cooley,* "that when a vacancy exists in an office which the law requires shall be filled at the next general election, the time and place of which are fixed, and that notice of the general election shall also specify the vacancy to be filled, an election at that time and place to fill the vacancy will be valid, notwithstanding the notice is not given; and such election cannot be defeated by showing that a small portion of the electors were actually aware of the vacancy or cast their votes to fill it. But this would not be the case if either the time or the place was not fixed by law, so that notice became essential for that purpose." Cooley, *supra,* 909. This proposition seems to be well supported by the cases. *State v. Orvis,* 20 Wis., 248; *People v. Hart-*

*well,* 12 Mich., 508; *State v. Cowles, supra; State v. Skirving,* 19 Neb., 497; *State v. Thayer, supra.*

We believe nearly if not quite all of the courts hold that when notice is required by the law, if there has been actual notice of the vacancy and the people have had a fair opportunity to vote, all of which may be indicated by the vote cast, the election will be valid, though formal notice was not given, and even though many refrained from voting because of a difference of opinion as to the true construction of the Constitution in regard to the existence of a vacancy or the time of filling it. Actual knowledge and an opportunity to vote take the place of notice, or are equivalent to it. Mechem, *supra,* sec. 174; *Adsit v. Sec. of State,* 84 Mich., 420. The right to hold an election is derived from the law and not from the notice. McCrary, *supra,* sec. 145. The cases upon this question of notice refer of course to statutes requiring notice to be given or proclamation to be made. of the election, and it is said that this notice is in addition to that which the law itself gives by implication when it directs that the election shall be held at a certain time and place. We are not aware of any provision of our law requiring notice to be given of elections held at the regular time in the regular manner.

It does not appear from the case agreed, nor has it been suggested, that the voters of Warren County did not know of the vacancy in the office of clerk, which occurred about two months before the election. It can hardly be supposed that such a change was made in the office of Clerk without becoming known almost immediately to the people of the county. There is no presumption against the validity of the election. The presumption, if there is any at all, is the other way. If notice of the vacancy and of the election to fill it was required, we must presume that it was given in the absence of proof to the contrary. Mechem, *supra,* sec.

219. The burden rests upon him who assails the validity of the election and contests the right of him who holds a certificate of election upon the ground of irregularity or of the omission of something directory which should have been done. Mechem, *supra,* sec. 220. The presumption of validity is strengthened by the requirement of our law that the local board of election shall judicially determine and declare the result, which was done in this case. Indeed, we do not understand it to be contended that the people had no actual notice that a clerk would be voted for at the election. The whole argument here was addressed to the sole question whether there was any authority conferred by the Constitution or by the statute to hold an election for clerk, and it was not claimed or even suggested that there was any irregularity in the mode of procedure or that the people did not in fact have a fair opportunity, if they desired, to cast their ballot for some person to fill the vacancy, if there was one.

We must not be understood to mean, by what we have said in this opinion, that there is any inherent reserved power in the people to hold an election to fill an office. It is freely admitted that authority to hold it must be found somewhere, either in the Constitution or in the statute. McCrary, *supra,* sec. 170. We merely hold that there was such authority to elect a clerk at the general election in 1904.

Our attention has been called to the case of *Deloatch v. Rogers,* 86 N. C., 357. It seems that the question we are now deciding was involved in that case and that the Court assumed, upon a state of facts somewhat like those we have in this case, that there was no vacancy to be supplied by a popular election. The matter does not seem to have been contested at all, nor was there the slightest discussion of it nor any citation of authority. It was simply taken for granted that an appointed clerk held to the end of the term, the main question being whether certain ballots were vitiated

under the provision of the statute by reason of the fact that there was on them the name of a person as a candidate for the office of clerk, and the opinion was directed almost solely to the consideration and decision of that question. It is desirable of course that there should be a stable and uniform construction of the organic law, but we cannot hold ourselves to be bound by that case to the extent of its laying down a rule to be followed without any inquiry into its correctness. We accept it as an authority, but must give it only the weight to which, under the circumstances, it is entitled. In construing the Constitution it is of the utmost importance that we ascertain the true intent of the people who by their delegates ordained it, and no interpretation of it can be said to be settled until it is settled right and in accordance with that intent. If by inadvertence we have departed from the real meaning of that instrument, we should return to it at the earliest moment, for, unlike a statute, which is easily changed if wrongly construed, the Constitution is intended to be permanent and is not so easily amended as to conform to the true will of the people. We must decline to follow *Deloatch v. Rogers,* though we do so with the greatest reluctance. But it must be done, in order to save to the people the full enjoyment of the elective franchise with which we think they never intended to part. There is no vested right to be injuriously affected by this decision of the Court, and no one, not a party to this action, is likely to be prejudiced by it in any way. We do not mean to say that the rule *stare decisis* should not apply to constitutional questions at all. It should perhaps have its proper weight in the decision of those questions as well as others. "The maxim *stare decisis* has greater or less force according to the nature of the question decided; and there are many questions upon which there is no objection to a change of decision other than grows out of those general considerations which favor certainty and stability in

the law.   These are questions where the decisions did not
constitute a business rule and where a change would invali-
date no business transaction conducted upon the faith of the
first adjudication.   As an illustration, take a case involving
personal liberty : A party restrained of his liberty claims to be
discharged under some constitutional provision ; the Court er-
roneously decided against him ; the same question arises again.
To change such a decision would destroy no rights acquired
in the past, if it would only give better protection to rights in
the future.   The maxim in such a case would be entitled to
very little weight, and mere regard for stability ought not to
be allowed to prevent a more perfect administration of jus-
tice."   Wells on *Res Adjudicata* and *Stare Decisis,* pp. 556,
557, citing *Kneeland v. Milwaukee,* 15 Wisc., 691.

It is suggested that in *Cloud v. Wilson, supra,* the *Chief
Justice* extended the principle of that case to Clerks of the
Superior Courts.   It is clear that this could not be done.
The authorities are all agreed upon this question, and those
we will cite emanate from the highest source.   "If the con-
struction put by the Court of a State upon one of its statutes
was not a matter in judgment, if it might have been decided
either way without affecting any right brought into question,
then, according to the principles of the common law, an opin-
ion on such a question is not a decision.   To make it so, there
must have been an application of the judicial mind to the
precise question necessary to be determined to fix the rights
of the parties, and decide to whom the property in contesta-
tion belongs.   And therefore this Court (and other courts
organized under the common law) has never held itself bound
by any part of an opinion, in any case, which was not need-
ful to the ascertainment of the right or title in question be-
tween the parties."   *Carroll v. Carroll,* 16 How. (U. S.),
287.   *Chief Justice Marshall* for the Court says: "It is a
maxim not to be disregarded that general expressions in

every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent; other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens v. Va.,* 5 Wheat., 399. "More is needful to constitute a precedent than merely that a principle or doctrine is announced within the appropriate limits of a cause. It is a fundamental law that a precedent must be a conclusion, a decision in a cause; and not a process of reasoning, an illustration, or analogy. The reasoning, illustrations and references contained in the opinion of a Court are not authority, not precedent; but only the points arising in the particular case and which are decided by the Court." Wells, *supra,* pp. 530, 531. These citations will suffice to show that we are no more bound by a mere statement made in *Cloud v. Wilson,* not necessary to the decision of the case, than if it had not been made at all. It is also argued that the language interpreted in *Cloud v. Wilson* is identical in meaning with that we are now construing and for this reason the decision is binding upon us as coming within the maxim *stare decisis.* We have already said that the language of the two sections is not the same in meaning. The difference may be thus illustrated: In *Cloud v. Wilson* the Court held that the words "regular election" meant a general election as distinguished from a special election and referred to the next general election of judges. If it had been ordained in the Constitution that vacancies should be filled first by appointment and then by a special election to be called by the Governor, this would certainly not have changed the decision in

RODWELL *v.* ROWLAND.

*Cloud v. Wilson,* as the words were construed to refer to the next general election of Judges and would not include a special election; but will any one contend that the words, "until an election can be regularly held," would not refer to such a special election. Indeed, in some of the cases it is held that like words, unless restrained by some other language of the Constitution, would authorize the calling of a special election, if the Legislature so provided. The adjective "regular" qualifying the word "election" may well refer to an election held at regular periods for the same office, but the adverb "regularly" qualifies the word "held" and refers not so much to the time as to the manner of holding the election, that is, according to the prescribed method *or rule,* which in our case is given in section 16. It would be strange indeed if the convention had provided for the filling by election of vacancies in all offices, the terms of which were fixed at four years, and left the important office of Clerk of the Superior Court to be filled by appointment for the unexpired term. Such an intention should be most plainly and unmistakably expressed before we adopt it as the true one, for there would be no reason in making such an exception to the general rule. That such was not the intention is clearly manifested by the use of plain and explicit words in sections 24 and 28 when reference is made to an appointment for an unexpired term. The difference in the language employed in the case of judges and in that of clerks and the language used when an appointment for the whole of the unexpired term was intended, led the members of the Convention of 1875, no doubt, to take the same view of the matter that we do. They did not amend section 29 because they thought it plain enough as it stood and free from all doubt as to its meaning.

We are told that the Judges of the Superior Court have in practice adopted a construction different from that we have placed upon the Constitution, and appointed to vacancies for

RODWELL *v.* ROWLAND.

the unexpired term. There is nothing in this record that tends to show such to be the case, but if it be true, while we have the greatest respect for their opinions, we should not permit such a construction to control us unless it meets with our approval. We must take the responsibility of deciding the question for ourselves, as it has been imposed upon us by the very instruments we are construing. It is our supreme duty to decide correctly, without giving undue weight to extraneous views and opinions, however much they may be entitled to our respect. We are not aware of the reasons which influenced them nor do we know to what extent the matter had been considered, and without this knowledge it would not always be safe to follow them, and especially should we not do so when we have no doubt as to the true meaning of the Constitution.

Our conclusion is that the defendant is not entitled to the office of Clerk, but that the relator was duly chosen to that office at the election of 1904, and is entitled to exercise its functions and to receive and enjoy its fees and emoluments. The mere fact that the defendant was appointed for the unexpired term can make no difference in the result. The Judge could not thus lengthen his term as fixed by the law.

Opinion of the Judges, 114 N. C., 927. There was error in the judgment of the Court below. Its judgment should have been for the relator instead of for the respondent.

Reversed.

BROWN, J., dissenting. I regret that I am compelled to differ with my able and learned brethren in the conclusion arrived at in this case. Were it not for a firm conviction that this question has been settled in this State for thirty years past, I should yield my judgment to theirs. I am convinced that this question has been put at rest for the past thirty years in this State: 1st, by the settled judicial decisions of this

Court, composed of some of the ablest lawyers that have ever adorned its judicial history; 2d, by acquiescence in this judicial construction and its adoption by the Constitutional Convention of 1875, and by legislative construction of the Constitution ever since; 3d, by the uniform practice of the Superior Court Judges for thirty years in filling vacancies in the office of Clerk of that Court.

1. Ever since the decision of *Cloud v. Wilson,* decided in 1875, the words "until the next regular election," and those other words of similar purport, "until an election can be regularly held," have been taken by the legislative and judicial departments of the State government to mean "until the next regular election for the office in which a vacancy has occurred." That decision was made by a Court of exceptional ability and the opinion was written by *Chief Justice Pearson,* one of the greatest Judges this or any other State has produced. Among lawyers his is *"Clarum et venerabile nomen."* It is true *Judge Reade* dissented, but it was not as to the meaning of these words, but as to the application of them to a particular judicial election. If I were not deeply sensible of the eminent ability, profound research and painstaking care of my esteemed brother who speaks for the Court in this case, I should say he had wholly failed to consider the scope and significance of both of the opinions in *Cloud v. Wilson,* and had not noted their very words, since he says that this Court does not overrule the principles decided and pronounced in that case. It is unnecessary for me to quote from the conclusive argument of the great *Chief Justice,* but I note the language of *Judge Reade* for the purpose of showing that he is not only in accord with *Chief Justice Pearson* as to the meaning of the words under discussion, but makes it clearer even than the opinion of the Court: "It is also a useful inquiry: For how long a time would the people be *likely* to part with this important elective power? As they parted

137——41

with it temporarily to suit their convenience, they would resume it as soon as convenient. The next inquiry is, is such *convenient* time indicated in the Constitution? It is the 'stated, established, usual period' when the people meet together for the *first* time, after the vacancy occurs, to vote for Judges of the Superior Courts. Then it is as convenient to fill a vacancy resulting from accident, as from the expiration of a term." Even a cursory reading of the opinions in that case, I am sure, will convince the profession that the construction of the Constitution therein promulgated is overruled by the opinion in this case. Therefore, I am unwilling to give it my concurrence. I believe in the stability of judicial decisions, and when acquiesced in for a long time they should not be lightly set aside. *Misera est servitus ubi jus vagum aut incertum.* "It is the function of a Judge," says *Lord Coke,* "not to make but declare the law according to the golden metewand of the law, and not by the crooked cord of discretion." If the rule of *stare decisis* is of any value, it should be adhered to and not set aside except for a very cogent and compelling reason, for *"Omnis innovatio plus novitate perturbat quam utilitate prodest."*

The vacancy in the office of Clerk of the Superior Court of Warren County occurred prior to the general election in 1904, at which election such clerks were not regularly elected. They were regularly elected in 1902 for four years. The next election when Clerks will be regularly elected occurs in November, 1906. *Judge Peebles* commissioned the defendant until that time, and in my opinion he acted according to the well-settled construction of the Constitution and according to the unvarying precedents in this State since 1875.

The adjective "regular" is used to qualify election so as to distinguish it from other kinds of elections. "Regular elections," says *Judge Reade,* "for an officer to fill an office, are those by which the office was originally and continuously

filled according to stated and set rules at periodical times."
*Cloud v. Wilson, supra. Judge Pearson* expressly declares
in his opinion that the words "regular election" mean the
next regular election for the office in which the vacancy oc-
curs. He says: "We think this construction the true one in
respect of Justices of the Supreme Court, Clerks of the Su-
perior Court and Solicitors." He further declares that this
is the construction adopted by the General Assembly. It is
not to be supposed that the framers of the Constitution used
words needlessly and without regard to their natural and
recognized significance. Why use the words "can be regu-
larly elected"? why not say "until the next election," or
"until an election can be held for members of the General
Assembly"? While the Constitution declares that clerks shall
be elected at the time and in the manner prescribed by law
for the election of members of the General Assembly, it fails
to state that the vacancies shall be filled at *any election* for
members of the General Assembly. It is not my purpose,
however, to attempt to strengthen the arguments of such con-
summate judicial writers as *Pearson* and *Reade.* My only
purpose is to show, if I can, how completely and fully the
contentions of the defendant in this case are supported by
both the opinions in *Cloud v. Wilson.* It is true that this
rule of construction has not been adopted and followed in a
number of States; but it must be remembered that in the
great Northwest, where cases are as plentiful as crops, prece-
dents can be found for almost any legal proposition. Yet the
decision in *Cloud v. Wilson* has been endorsed in several
other respectable jurisdictions. In *Lynch v. Budd,* 34 L.
R. A., 46, the Supreme Court of California defines the mean-
ing of the words "next regular election," and says that it
means the next election provided for filling the particular
office vacant, not the next general election. In *Matthews v.
Shawnee County Commissioners,* 34 Kansas, 606, the Court

says: "The words 'regular election' do not mean necessarily general election. * * * They simply mean the regular election prescribed by law for the election of the particular officer to be elected." To the same effect are the following cases: *McGee v. Gardner,* 3 S. D., 554; *Sawyer v. Haydon,* 1 Nev., 75; *Watson v. Cobb,* 2 Kansas, 32; *Love v. Mathewson,* 47 Cal., 442. In the California case first cited, the case of *Cloud v. Wilson* is cited with approval.

The construction adopted in *Cloud v. Wilson* was expressly recognized in 1882 as applying to vacancies in the office of Clerk of the Superior Court in *Deloatch v. Rogers,* 86 N. C., 358 and 731, by a Court composed of such eminent Judges as *Smith, Ashe* and *Ruffin.* It is not likely that so careful a Judge as *Chief Justice Smith* could have been inadvertent to the language he used. A portion of his opinion, on page 731, shows unmistakably that the Court over which he presided recognized the rule of constitutional construction laid down in *Cloud v. Wilson* as being applicable to Clerks of the Superior Court, and that such rule was not changed by the Convention of 1875. Not long before the general election for members of the General Assembly and other officers in November, 1880, Thomas D. Boone was appointed Clerk of the Superior Court of Hertford County to fill a vacancy for the unexpired term, just as this defendant has been appointed. Boone was voted for at said election. The ballots were declared worthless paper, as there was no vacancy, showing clearly that the question of vacancy or no vacancy was considered by the Court. The Court says: "But as the decision sustains the ruling of the Court in the rejection of all the ballots that have the name of the person voted for to fill the office of Clerk, *when there was no vacancy to be supplied,* the oversight does not affect the conclusion reached and the proper determination of the appeal." (P. 731). In *Norfleet v. Staton,* 73 N. C., 546, while the case turned

upon the power of a *de facto* Judge to appoint a clerk, *Judge Reade* says: "By reason of the failure of the person elected to qualify there was a vacancy in the office of Superior Court Clerk for the term of four years. The Constitution provides that the Judge of the Superior Court shall fill such vacancy." This was written the term following the decision in *Cloud v. Wilson.* In *Peebles v. Boone,* 116 N. C., 58, this Court recognizes the fact that an unexpired term of a clerk, who resigned December 7, 1883, extended to December 1, 1886, and that a Judge of the Superior Court properly filled the vacancy for the unexpired term. I cite this case to show how generally the construction of the Constitution laid down in *Cloud v. Wilson* has been recognized and accepted by this Court as applicable to vacancies in the office of Clerk of the Superior Court. The Opinion of the Judges, 114 N. C., 925, is not a precedent, as there was no case before the Court to be adjudicated. It was the opinion of three very able lawyers given at the request of the Governor of the State, written by the eminent lawyer who presided over this Court at that time. But I am willing to give it all the force of a precedent, for there is not a line in it that controverts any contention of the defendant in this case. The only question decided was whether a Judge, who had been elected by the people to fill a vacancy, was elected for the unexpired term of his predecessor or for a full term of eight years. The judges do say that the word "vacancy" means, *ex vi termini,* an unexpired term, and this agrees with the defendant's contention in this case as to the meaning of the words of the Constitution.

2. The authority of the decisions has been recognized and its construction acquiesced in by a constitutional convention and the legislative department of the State government. The Constitutional Convention of 1875 met within six months after the decision in *Cloud v. Wilson* was handed

down. The able lawyers of that body took the case of *Cloud v. Wilson* under a careful consideration. They studied the full scope and effect of the opinions. This is manifest from the concurring opinion of *Judge Avery* (who was a prominent member of that convention) in *Ewart v. Jones*, 116 N. C., 575. In consequence of the opinions in *Cloud v. Wilson* the Convention amended the Constitution of 1868 in respect to Judges of the Superior Court and of all other appointees of the Governor; but the Convention allowed the section in regard to Clerks of the Superior Court to remain unchanged, section 35, Article IV, of the Constitution of 1868 being brought forward and being now section 29, Article IV, Const. of 1875. Not only are the two phrases "until the next regular election" and "until an election can be regularly held" of similar purport and meaning, but this Court in *Cloud v. Wilson* expressly and in unmistakable terms declared that the construction of the phrase therein given applied to vacancies in the office of Clerk of the Superior Courts. "We think this construction the true one," says *Chief Justice Pearson,* "in respect to Justices of the Supreme Court, Judges of the Superior Courts, Clerks of the Superior Courts and Solicitors." It is idle to conjecture for a moment that such thorough lawyers as R. T. Bennett, Chairman of the Committee on Judicial Department, Shepherd, Manning, Avery, Jarvis, and other eminent lawyers and men, who were members of the Convention of 1875, should have overlooked the plain language of the *Chief Justice* extending the construction laid down by him to the article of the Constitution relating to Clerks of the Superior Courts. With those unmistakable words before them, why then did they not make the same changes in that section as in the sections relating to judges and other appointees of the Governor? There can be but one logical answer to that question. They ratified such construction and desired that

Clerks of the Court should be elected only once every four years and that the appointee of the Judge should hold for the unexpired term. If the Convention had any other view, it would have amended that section as it did the others and thereby relieve the matter of any possible doubt. As counsel for the defendant say in their very able brief: "The Convention had the opinion of the Court before it; it weighed it and deliberated upon it, and its failure or refusal to make any change in the Constitution in regard to the office of Clerks of the Superior Court is equivalent to a declaration by the Convention that in regard to that office it would abide by the decision of the Court. It was more than acquiescence, it was direct ratification." So I think that now the decision is entitled to more weight in its reference to the office of Clerk than it was before the Convention. The construction announced was adopted by the Convention in reference to that office and practically becomes thereby a part of the organic law of the State. The phrases "regular election" and "regularly elected" have been judicially defined and such definition recognized and acted upon by the Convention, and so long as the phrase is retained in our organic law we cannot escape the legal import as declared by this Court. We are compelled to infer that wherever in the Constitution or statute of this State either phrase was therefore employed, it was used with full knowledge of and acquiescence in this judicial definition and interpretation.

The legislative view: "When the scales are so evenly balanced we deem it our duty to settle the preponderance by casting the legislative view, which is of peculiar weight in this case, into the scale where it belongs." Opinion of the Judges, *supra.* Every General Assembly that has met since 1875 has construed the Constitution in its relation to the office of Clerk of the Superior Court in accordance with the contention of the

defendant in this case.   Until after the amendment of the
Constitution in 1875 there could not be held an election to
fill a vacancy in the office of Superior Court Judge, but after
the Constitution of 1875 was adopted the General Assem-
bly made provision for holding elections to fill vacancies for
unexpired terms in judicial offices.   Laws of 1876-'77, chap.
275, sec. 275.   It is a most significant fact that neither the
General Assembly of 1876-'77 or any subsequent one has
made any provision whatever for holding an election to fill
a vacancy in the office of Clerk of the Superior Court.   The
Act of 1876-'77 is incorporated in The Code of 1883, sec.
2736, and it names the offices for which elections must be
held to fill vacancies for unexpired terms.   The office of
Clerk of the Superior Court is conspicuous by its absence
from the section.   It is nowhere named in it.   Why provide
for elections to fill unexpired terms in other offices and en-
tirely ignore the office of Clerk of the Superior Court ?   Be-
cause *Cloud v. Wilson* declared the unexpired term is to be
filled by the Judge.   That decision was recognized and en-
dorsed by the General Assembly which enacted The Code
and the identical case is cited at the end of the section.

The Election Law of 1901, chap. 89, sec. 4, is practically
identical with section 2736 of The Code, but in reference to
the office of Clerk it leaves no doubt of the legislative view of
the proper constitutional construction, for in section 1 it
practically prohibits an election for Clerk in 1904.   It pro-
vides that on the first Tuesday after the first Monday in
November, 1902, and every *four* years thereafter an elec-
tion shall be held in each county for Clerk of the Superior
Court and at such times an election shall be held in the sev-
eral judicial districts for solicitors.   On the same page of
the act provision is made for an election to fill vacancies in
the office of Solicitor by election, but none whatever to fill

vacancies in office of Clerk of the Superior Court by election. Why was this? Evidently, because the Genral Assembly continued to give its approval to the construction of the Constitution laid down in *Cloud v. Wilson* and acted on and acquiesced in for thirty years past. Certainly the Constitution is no more self-executing in providing the machinery for a clerk's election than as to any other offices named in it. In view of this legislative history, the conclusion is irresistible that the several General Assemblies which have convened since the adoption of the Constitution of 1875 have construed the language of the Constitution to mean that in the case of a vacancy in the office of Clerk of the Superior Court, the Judge has a right to appoint and his appointee shall hold until the next regular election for Clerks of the Superior Court as provided for in the Constitution, which election will occur in 1906.

3. The construction by the Judges of the Superior Court.

These judges ever since 1875 and prior thereto have uniformly appointed Clerks of the Superior Court for unexpired terms, and such appointments have been recognized as legal throughout the entire State. In the past thirty years there must have been a great many of such appointments and never, until this case, has the right of the Judge to appoint for the unexpired term been questioned. I think it highly probable that the four members of this Court who served on the Superior Court bench made such appointments, and their appointees served for the unexpired term without challenge to their authority. This fact is entitled to weighty consideration, as it is hardly to be supposed that all the Superior Court Judges would have habitually misconstrued the law or usurped authority which was not conferred upon them.

4. Independent of the constitutional question there was no legal election.

Elections can be held only as directed by law. No election is valid, no matter how great the desire for it or how many participants, unless the requisite machinery is provided by law. *Monroe v. Wells,* 83 Md., 506.

The Constitution is no more self-executing in the case of vacancies in the Clerk's office than as to other vacancies. Stress is laid by the Court upon section 16, Article 4: "A Clerk of the Superior Court, etc., shall be elected, etc., at the time and in the manner prescribed by law for the election of members of the General Assembly." This must be construed with reference to section 17, which provides that clerks shall hold office for four years, otherwise it would be lawful to elect a clerk every two years, when members of the General Assembly are elected. There is then, taking the two sections together, no constitutional warrant whatever for holding an election for Clerk at more frequent intervals than every fourth year. I have already shown that the Act of 1901 expressly provides for holding such election in 1902 and 1906 only.

In *Van Amringe v. Taylor,* 108 N. C., 198, *Merrimon, C. J.,* says: "The ascertainment of the popular will or desire of the electors under the mere semblance of an election, unauthorized by law, is wholly without legal force or effect, because such election has no legal sanction. In settled, well regulated government, the voice of electors must be expressed and ascertained in an orderly way prescribed by law. It is this that gives order, certainty, integrity of character, dignity and authority of government to the expression of the popular will. An election without the sanction of law expresses simply the voice of disorder, confusion, revolution, however honestly expressed."

In *Commissioners v. Baxter,* 35 Pa., 263, it is said that "majorities go for nothing at an irregular election; they are

not even regarded as majorities, for orderly citizens have the right to stay away from such elections."

In *Sawyer v. Haydon,* 1 Nev., 75, the Court says: "We think no Court or Judge has gone so far as to hold that the people might hold an election, or vote for any particular officer at a general election, unless special provision was made for electing such officer for the particular term for which he was seeking to be elected, either in the Constitution or in some statutory enactment."

It is not sufficient that an election be authorized or warranted by the Constitution, but the time and manner of its being held must be specifically provided, and there must be affirmative legislation providing the necessary machinery for holding the same. The only election for Clerk of the Superior Court mentioned in or authorized by the Constitution is the regular election every four years, and then it must be held in the manner and at the time prescribed for the election of members of the General Assembly. That is the plain meaning of the Constitution. The attempted election in Warren County in 1904 was a nullity. Nowhere, in Constitution or in statute, is there any provision made for voting for a Clerk of the Superior Court in case of a vacancy. There is ample provision made for holding elections to fill vacancies in the offices of Secretary of State, Treasurer, Auditor, Superintendent of Public Instruction, Attorney-General, Solicitor, Justice of the Supreme Court, Judge of the Superior Court, or any other State officer. But not one word do we find about elections to fill vacancies in the office of Clerk of the Superior Court. *Expressio unius, exclusio alterius.*

For these reasons, I am of opinion that the judgment of the Superior Court should be affirmed.